.IUDGE SCHEINDLIN

**08 CV 7061**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FINANCE ONE, INC.,

               Plaintiff,

      -against-

D.W. AMERICA, INC., JAE CHUL
CHUNG, JAE HUN JUNG and
KWANG B. PARK,

             Defendants.

-------------------------------------------------------------X

08 CIV.
ECF Case

COMPLAINT



RECEIVE
AUG 0 8 2008
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff Finance One, Inc., through its attorneys Cinque & Cinque, P. C., as and for its

complaint alleges:

## JURISDICTION AND PARTIES

      1. Plaintiff Finance One, Inc. is a corporation organized and existing under the laws of

the State of California, with its principal place of business in California. Plaintiff is authorized to

do business in New York and is engaged in the business, *inter alia*, of providing financing to

companies engaged in the garment industry.

      2. Defendant D.W. America, Inc. ("D.W.") is a corporation organized and existing under

the laws of the State of New York, with its principal place of business in New York. D.W. is

engaged in the business, *inter alia*, of manufacturing garments.

      3. Defendant Jae Chul Chung ("Chung") is a resident of the State of New Jersey.

4. Defendant Jae Hun Jung ("Jung") is a resident of the State of New Jersey.

5. Defendant Kwang B. Park ("Park") is a resident of the State of New Jersey.

(Defendants Chung, Jung and Park will be collectively referred to herein as the "Individual Defendants.")

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a), in that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of diverse states.

## BACKGROUND

7. By Collection Date Factoring Agreement dated April 30, 2007 between plaintiff and D.W. (the "Factoring Agreement," a copy of which is annexed as Exhibit "A"), D.W. appointed plaintiff as the sole factor of D.W.

8. On or about April 30, 2007 plaintiff and D.W. entered into a trade financing agreement supplement to the Factoring Agreement (the "Supplement," a copy of which is annexed as Exhibit "B)," confirming the terms and conditions of plaintiff's extending of financial accommodations for D.W.'s account.

9. Pursuant to the terms of the Factoring Agreement and Supplement plaintiff agreed to act as D.W.'s sole factor and to make advances to D.W. or for D.W.'s account against the purchase price of D.W.'s accounts, and in consideration of this factoring and these advances D.W. agreed to repay the amount of this factoring and these advances together with interest, factoring commission, fees and collection clearance charges as set forth in the Factoring Agreement.

10. Pursuant to the terms of the Factoring Agreement and Supplement plaintiff factored

2

D.W.'s accounts and provided purchase order financing to D.W.

11. As of August 1, 2008 D.W. owed plaintiff $953,731.09 as follows: (a) on the factoring account, $135,158.04 in principal and $2,350.34 in accrued interest; and (b) on the purchase order financing account, $785,062.74 in principal and $31,159.97 in unpaid commissions.

12. By continuing guarantee dated April __, 2007 (Exhibit "C" hereto), defendant Chung unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff.

13. By continuing guarantee dated April __, 2007 (Exhibit "D" hereto), defendant Jung unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff.

14. By continuing guarantee dated April 4, 2007 (Exhibit "E" hereto), defendant Park unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff. (The three guarantees identified in paragraphs 11, 12 and 13 will be collectively referred to as the "Guarantees").

15. On or about May 27, 2008, June 10, 2008, June 23, 2008 and July 31, 2008 defendants were advised of their default and a demand for payment was made.

### FIRST CLAIM FOR RELIEF AGAINST D.W.

#### (Breach of Factoring Agreement and Supplement)

16. Pursuant to the terms of the Factoring Agreement and Supplement, the sum of $953,731.09 was due and owing to plaintiff by D.W. as of August 1, 2008.

17. D.W. has refused and still refuses to pay the obligation due, despite plaintiff's demand.

18. By reason of the foregoing, the amount of $953,731.09 plus applicable interest is

3

presently due and owing to plaintiff.

## SECOND CLAIM FOR RELIEF AGAINST D.W.

### (Account Stated)

19. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "17."

20. Plaintiff rendered monthly statements of account to D.W. pursuant to the terms of the Factoring Agreement.

21. The Client Statement and the PO Financing Statement for the period May 1, 2008 to May 31, 2008 (collectively annexed as Exhibit "F") reflected a balance due plaintiff of $1,026,079.99.

22. D.W. did not make any written objection to these statements of account within thirty (30) days from the date such statement was rendered by plaintiff to D.W.

23. Pursuant to paragraph 6.6 of the Factoring Agreement, the statements of account for the period May 1, 2008 to May 31, 2008 thereby constitute an account stated between plaintiff and D.W., showing a principal amount due plaintiff of $1,026,079.99 as of May 31, 2008.

24. Since May 31, 2008 $105,895.75 was received by plaintiff on account.

25. By reason of the foregoing, D.W. is indebted to plaintiff in the amount of $920,184.24 plus applicable interest and fees arising subsequent to May 31, 2008.

## FIRST CLAIM FOR RELIEF AGAINST THE INDIVIDUAL DEFENDANTS

### (Breach of Guarantees)

26. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

4

"17."

27. The Guarantees of the Individual Defendants provide that they are primary and unconditional and bind the Individual Defendants jointly and severally to pay plaintiff immediately upon the default of D.W.

28. D.W. has defaulted by its failure to pay money owed plaintiff pursuant to the terms of the Factoring Agreement and Supplement.

29. Neither D.W. nor the Individual Defendants have paid the money owed to plaintiff, despite due demand.

30. The Individual Defendants pursuant to the terms of the Guarantees each owe plaintiff $953,731.09 as of August 1, 2008 together with applicable interest and fees.

WHEREFORE, plaintiff demands judgment against defendants as follows:

(a) On the First Claim for Relief against D.W., for damages in the amount of $953,731.09 together with interest and fees on this amount from August 1, 2008 pursuant to the terms of the Factoring Agreement and Supplement;

(b) On the Second Claim for Relief against D.W., for the sum of $920,184.24 together with interest and fees on this amount from May 31, 2008 pursuant to the terms of the Factoring Agreement and Supplement;

( c) On the Third Claim for Relief against the Individual Defendants jointly and severally for damages in the amount of $953,731.09 together with interest and fees on this amount from August 1, 2008 pursuant to the terms of the Guarantees; and

(d) On All Claims for Relief for attorneys' fees, interest and costs pursuant to the terms

of the Factoring Agreement, Supplement and Guarantees, and other relief the Court deems just

and proper.

DATED: NEW YORK, NEW YORK
        AUGUST 8, 2008

CINQUE & CINQUE, P. C.

By:

James P. Cinque (JPC 3673)
Attorneys for Plaintiff
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone: (212) 759-5515
Telefax:    (212) 759-7737
Email:      CINQUE845@aol.com

6

# Trade Financing Agreement
## Supplement To Collection Date Factoring Agreement

**Client:**   **D.W. AMERICA, INC. ("Client")**
**226 W. 37th Street, Suite 400**
**New York, NY 10018**

**Factor:**   **Finance One, Inc. ("FOI")**
**888 S. Figueroa Street, Suite 1100**
**Los Angeles, CA 90017-5455**

This **Trade Financing Agreement** (hereinafter called "Supplement") entered into between Finance One, Inc. ("FOI") and D.W. AMERICA, INC. ("Client" and is a supplement to the Collection Date Factoring Agreement between them dated April 30 , 2007, as amended, if at all (the "Factoring Agreement"). This Supplement is (a) hereby incorporated into the Factoring Agreement, (b) made a part thereof and (c) is subject to the other terms, conditions, covenants and warranties thereof. All terms, including capitalized terms, used herein shall have the meanings ascribed to them respectively in the Factoring Agreement, unless otherwise defined in this Supplement.

This Supplement will confirm the terms and conditions upon which FOI may, from time to time in FOI's sole discretion, assist Client in establishing or opening foreign or domestic letters of credit and extend other financial accommodations for Client's account. Accordingly, FOI and Client hereby agree as follows:

## Section 1. CREDIT ACCOMMODATIONS

1.1     FOI may, in FOI's sole discretion, from time to time, for Client's account, at Client's request, provide one or more of the following financial accommodations to Client or Client's designee(s): (a) issue, open, or cause the issuance or opening of letters of credit or purchase or other guaranties for the purchase of goods and services in the ordinary course of Client's or any such designee's business or for any other purpose approved by FOI, (b) assist Client in establishing or opening letters of credit for such purposes by indemnifying the issuer thereof or guaranteeing Client's payment or performance to such issuers in connection therewith, (c) make payments for Client's or such designee's accounts in connection with such purchases, (d) send monies by wire or issue checks at Client's or such designee's request in connection with such purchases, and/or (e) issue or guarantee and acceptances relating to the foregoing or otherwise. All such letters of credit or purchase or other guaranties and other financial accommodations are referred to herein individually as a "Credit" and collectively as "Credits".

1.2     The opening or issuance of any Credit shall at all times and in all respects be in FOI's sole discretion. The amount and extent of any Credit and the terms, conditions and provisions thereof shall in all respects be determined solely by FOI and shall be subject to change, modification and revision by FOI, in FOI's sole discretion, at any time and from time to time. The maturity of each Credit Shall not exceed sixty (60) days after opening or issuance, except in FOI's sole discretion.

1.3     Client shall, at FOI's request in connection with the opening, issuance, continuance of, or any payment with respect to, any Credit, deposit with FOI cash or other additional collateral satisfactory to FOI, in such amounts as FOI, in FOI's sole discretion, may require from time to time, whether prior to the opening or issuance of any Credit or at any time or times thereafter. Client's failure to make any such deposit within five (5) days after demand therefor shall constitute an Event of Default. No interest shall be paid to Client on any cash or other collateral so deposited, unless otherwise agreed by FOI.

1.4     Without limiting FOI's discretion, in any way, with respect to the extension of factoring or other financial accommodations pursuant to the Factoring Agreement, this Supplement or otherwise, as a condition

to the opening or issuance of any Credit by FOI, Client shall have additional loans available to Client pursuant to the formulas and limitations set forth in the Factoring Agreement or any supplement thereto, on the date of the proposed opening or issuance thereof, in an amount equal to or greater than one hundred percent (100 %) of the amount of the proposed Credit to be opened or issued. FOI may, in its sole discretion, however, waive this requirement from time to time.

1.5     Except in FOI's sole discretion, the aggregate maximum amount of loans which might otherwise be available to Client, pursuant to the formulas and limitations set forth in the Factoring Agreement or any supplement thereto, shall be reduced from time to time by an amount equal to one hundred percent (100 %) of the then outstanding aggregate amount of all Credits and all other commitments and obligations made or incurred by FOI with respect thereto.

1.6     Except in FOI's sole discretion, the amount of all Credits and all other commitments and obligations made or incurred by FOI for Client's account in connection therewith shall not exceed $1,500,000.00 in the aggregates at any time outstanding.

1.7     All indebtedness, liabilities, expenses and Obligations of any kind paid, arising or incurred by FOI in connection with this Supplement, any Credit or any documents, drafts and acceptances thereunder, whether present or future, whether arising or incurred before or after termination or non-renewal of this Factoring Agreement shall be incurred solely as an accommodation to Client and for Client's account and constitute part of the Obligations, including without limitation: (a) all amounts due or which may become due under any Credit or any drafts or acceptances thereunder: (b) all amounts charged or chargeable to FOI or Client by any bank or other issuer of any Credit or any correspondent which opens, issues or is otherwise involved with any Credit, including without limitation, all fees, expenses and commissions: (c) FOI's fees, expenses and commissions: (d) duties, freight, taxes, costs, insurance and all such other charges and expenses which may pertain directly or indirectly to any Obligations or to the Credits or goods or documents relating thereto: and (e) all other indebtedness and obligations owed by Client to FOI pursuant to, in connection with or arising from this Supplement, the Credits or any drafts or acceptances relating thereto.

1.8     All such Obligations shall accrue interest at the then effective governing rate provided for in the Factoring Agreement, commencing on the date any payment is made, or obligation incurred, by FOI and all such Obligations shall, together with interest thereon and other sums owed by Client to FOI hereunder, be payable and evidenced as provided in the Factoring Agreement or any supplement thereto.

1.9     In addition to all other fees and expenses payable under the Factoring Agreement and this Supplement, and any charges, fees, or expenses charged by any bank or other issuer or correspondent in connection with any Credit, Client agrees to pay to FOI the following commissions for FOI's services hereunder, which shall be due and payable on the opening or issuance of each Credit or, if the original term is extended, on the extension thereof: (a) a charge of the greater amount of $300 or one and one half of one percent (1.50%) of 'the face amount of any Credit less Client's deposit' for up to the initial thirty (30) days of the term thereof and an additional charge of the greater amount of $300 or one and one half of one percent (1.50%) of 'such face amount of Credit less Client's deposit' for each additional thirty (30) days, or any portion thereof, of the original term or any extension thereof and (b) in addition to any bank charges, a charge for each thirty (30) day period, or any portion thereof, of the original or any extended term of any outstanding drafts or acceptance equal to the greater amount of $300 or one and one half of one percent (1.50 %) of 'the face amount of Credit less Client's deposit' thereof. Client also agrees to pay to FOI a handling fee of three hundred dollars ($300) for occurrence of any transactions described in Section 1.1. In addition, Client agrees to pay to FOI, FOI's and any bank's, other issuer's or correspondents' customary charges for amendments, extensions and administration relating to any Credit, which charges shall be due and payable immediately on the day of incurrence and at FOI's option may be charged to any of Client's account(s) maintained by FOI. After the occurrence of an Event of Default and for so long as such Event of Default continues, all the Obligations under this Trade Financing Agreement will, at FOI's option, bear a charge of the greater amount of $1,000 or five percent (5.00%) of 'the total face amount of outstanding Credit less Client's deposit' for each additional thirty (30) days.



Initial   Initial   Initial

2

1.10    Nothing contained herein shall be deemed or construed to grant Client any right, power or authority to pledge FOI's credit in any manner. FOI shall have no liability of any kind with respect to any Credit opened or issued by a bank or other issuer or any draft or acceptance with respect thereto unless and until FOI shall have first duly executed and delivered FOI's guarantee or indemnification in writing with respect thereto, as provided herein.

## Section 2. ADDITIONAL SECURTY INTEREST

2.1    As additional security for the prompt performance, observance and payment in full of all Obligations, Client hereby grant to FOI a continuing security interest in, a lien upon, and a right of set off against, and Client hereby assigns, transfers, pledges and sets over to FOI all of the following property acquired by Client in connection with any Credit or otherwise owned by Client , whether now owned or hereafter acquired (which, together with other property subject to security interests or liens in FOI's favor pursuant to the Factoring Agreement, any supplement thereto, or otherwise, is hereinafter referred to as the " Collateral"): (a) all raw materials, work-in-process, finished goods and all other inventory and goods of whatsoever kind or nature, wherever located, including inventory or goods in transit ("Inventory"), including without limitation, all wrapping, packaging, advertising and shipping materials, and all other goods consumed in Client's business, all labels and other devices, names or marks affixed or to be affixed thereto for purposes of selling or of identifying the same or the seller or manufacturer thereof and all of Client's right, title and interest therein and thereto: (b) documents of payment, transport and title or the equivalent thereof, including without limitation, original contracts, orders, invoices, checks, drafts, notes, documents, warehouse receipts, bills of lading, shipping receipts, dock receipts and delivery tickets and including, but not limited to, such documents made available to Client for the purpose of ultimate sale or exchange of Inventory or for the purpose of loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with Inventory in a manner preliminary to their sale or exchange: (c) all books, records, other property and general intangibles relating to the foregoing: (d) all products and proceeds of the foregoing in any form, including without limitation, insurance proceeds and any claims against third parties for loss or damage to or destruction of any or all of the foregoing: and (e) the assignment of proceeds of L/C's to FOI for an amount that is higher than the requested credit amount by at least 15%. The assigned L/C must be in a format and terms acceptable to FOI.

2.2    Client hereby recognizes and admits that until all of the Obligations have been fully and indefeasibly paid and discharged, FOI may be deemed to have absolute ownership in and unqualified right to the possession and disposal of the following: (a) all property shipped under or pursuant to or in connection with any Credit or in any way related thereto and, including, but not limited to, the documents, drafts or acceptances drawn thereunder, whether or not released to Client, (b) in and to all shipping documents, warehouse receipts, policies, or certificates of insurance and other documents accompanying or relative to documents, drafts or acceptances drawn under or relating to any Credit, and (c) all proceeds of each of the foregoing.

2.3    FOI may, at any time or times, exercise any or all of FOI's rights of ownership, including the rights of possession and sale or other disposition, with or without notice to Client, without liability to Client and entirely at Client's expense and without relieving Client from any Obligations.

## Section 3. ADDITONAL REPRESENTATIONS, WARRANTIES AND COVENANTS

Client hereby represents, warrant and covenant to FOI the following (which shall survive the execution and delivery of this Supplement), the truth and accuracy of which, or compliance with, being a continuing condition of the making of loans by FOI under the Factoring Agreement or any supplement thereto and the extension by FOI of each Credit and other financial accommodations pursuant hereto:

3.1    All sales of any Inventory shall be made by Client only in the ordinary course of business and the Accounts arising from such sales and proceeds thereof shall be and are hereby transferred and assigned to FOI and Client confirms that FOI's lien and security interest extends and attaches to those Accounts and proceeds.

Initial  Initial  Initial                                                                                              3

3.2     Except as FOI may otherwise specifically consent in writing prior to the opening or issuance of any Credit, all Credit shall be opened or issued to cover the actual purchase and delivery of Inventory solely for Client's account.

3.3     All shipments made under any Credit are in accordance with the governmental laws and regulations of the countries in which the shipments originate and terminate, and are not prohibited by any such laws and regulations.

3.4     Client assumes all risk, liability and responsibility for, and agrees to pay and discharge, all present and future local, state, federal or foreign taxes, duties, or levies. Any embargo, restriction, laws, customs or regulations of any country, state, city, or other political subdivision, where the Collateral is or may be located, or wherein payments are to be made, or wherein drafts may be drawn, negotiated, accepted, or paid, shall be solely Client's risk, liability and responsibility.

3.5     All documents, instruments, notices and statements relating to any Credit and/or the Collateral, if any, shall at FOI's request, be promptly delivered to FOI.

3.6     Client shall procure promptly, or cause to be procured, any necessary licenses for the shipping of goods and comply or cause any drawer under, or beneficiary of, any Credit (or any transferee or assignee thereof), to comply with all foreign and domestic governmental laws and regulations in regard to the shipping of the Inventory, the financing thereof or payment therefor, including governmental laws and regulations pertaining to transactions involving designated foreign countries or their nationals and to furnish such certificates in that respect as FOI or any bank or other issuer or correspondent may at any time require.

3.7     The only locations of any Collateral are those addresses listed on **Schedule A** annexed hereto and made a part hereof. Schedule A sets forth the owner and/or operator of the premises at such addresses, for all locations which Client does not own and operate and all mortgages, if any, with respect to the premises. Client shall not remove any Collateral from such locations, without FOI's prior written consent, except for sales of Inventory in the ordinary course of Client's business.

3.8     Client shall at all times maintain, with financially sound and reputable insurers, casualty and hazard insurance with respect to the Collateral for not less than its full market value and against all risks to which it may be exposed. All such insurance policies shall be in such form, substance, amounts and coverage as may be satisfactory to FOI and shall prove for thirty (30) days minimum prior cancellation notice in writing to FOI. FOI may act as attorney for Client in obtaining, adjusting, setting, amending and canceling such insurance. Client shall promptly (a) obtain endorsements to all existing and future insurance policies with respect to the Collateral specifying that the proceeds of such insurance shall be payable to FOI as FOI's interests may appear and further specifying that FOI shall be paid regardless of any act, omission or breach of warranty by Client, (b) deliver to FOI an original executed copy of, or executed certificate of the insurance carrier with respect to, such endorsement and, at FOI's request, the original or a certified duplicate copy of the underlying insurance policy  and (c) deliver to FOI such other evidence which is satisfactory to FOI of compliance with the provisions hereof.

3.9     Client shall promptly notify FOI in writing of the details of any loss, damage, investigation, action, suit, proceeding or claim relating to the Collateral or which would result in any material adverse change in Client's business, assets, goodwill or condition, financial or otherwise.

3.10    At FOI's option, FOI may apply any insurance monies received at any time to the cost of replacement for the Inventory and/or to payment of any of the Obligations, whether or not due, in any order and in such manner as FOI, in FOI's sole discretion, may determine.

3.11    Upon FOI's request, at any time and from time to time, Client shall, at Client's sole cost and expense, execute and deliver to FOI written reports or appraisals as to the Inventory listing all locations, items and categories thereof, describing the condition of same and setting forth the lower of cost or fair market value thereof, in such form as is satisfactory to FOI.



Initial  Initial  Initial

4

3.12    Client shall (a) use, store and maintain the Inventory with all reasonable care and caution and (b) use the Inventory for lawful purposes only and in conformity with applicable laws, ordinances, regulations and insurance policies.

3.13    Client assumes all responsibility and liability arising from or relating to the use, sale or other disposition of the Inventory and other Collateral.

## Section 4. INDEMNIFICATION AND RELEASE

4.1    Client shall and does hereby indemnify FOI and hold FOI harmless from and against, and agree to pay FOI on demand the amount of, any and all losses, costs, claims, demands, causes of action, liabilities or expenses (collectively, "Liabilities") which FOI may suffer or incur arising from or in connection with any transactions or occurrences relating to any Credit, the Collateral and any documents, drafts or acceptances thereunder or relating thereto, including, but not limited to, Liabilities due to any action taken by any bank or other issuer or correspondent with respect to any Credit. Client further agrees to and does hereby release and hold FOI harmless for any errors, delays or omissions, whether caused by FOI, by any bank or other issuer or correspondent or otherwise. Client's unconditional obligation to FOI hereunder shall not be modified or diminished for any reason or in any manner whatsoever. Any fees, commissions or other charges made to FOI with respect to any Credit or other Obligations by any bank or other issuer or correspondent thereof shall be conclusive and may be charged by FOI to any of Client's account(s) maintained by FOI.

4.2    The drawer under or beneficiary of any Credit (or any assignee or transferee thereof) shall be deemed Client's agent and Client assumes all risk, loss, liabilities, charges and expenses with respect to their acts or omissions.

4.3    FOI shall not be responsible for and is hereby released from any liability for: (a) the existence, character, quality, quantity, condition, packing, value or delivery of the property purporting to be represented by any documents: (b) any difference in character, quality, quantity, condition, packing, value or delivery of the property from that expressed in documents: (c) the validity, sufficiency or genuineness of any documents or drafts, or of any endorsements thereon, even if such documents, drafts or endorsements should in fact prove to be in any or all respects invalid, insufficient, altered, fraudulent or forged; (d) the time, place, manner or order in which shipment is made: (e) any or all trans-shipments, partial or incomplete shipment or failure or omission to ship any or all of the property referred to in any Credit, documents or drafts: (f) the character, adequacy, validity or genuineness of any insurance or the solvency or responsibility of any insured, or for any other risk connected with insurance: (g) any deviation from instructions, delay, default or fraud by the shipper and/or anyone else in connection with the property or the shipping thereof; (h) the solvency, responsibility or relationship to the property of any party issuing any documents in connection with such property: (i) delay in arrival or failure to arrive of either the property or any of the documents relating thereto or any delay in giving or failure to give notice of arrival or any other notice; (j) any breach of contract between the shippers or vendors and Client, or any laws, customs and regulations which may be effective in countries of negotiation and/or payment of any Credit; (k) failure of any draft or documents to bear any reference or adequate reference to any Credit or failure of documents to accompany any draft at negotiation, or failure of any person to note the amount of any document or draft on the reverse of any Credit or to surrender or take up any Credit or to forward documents other than drafts as required by the terms of any Credit; or (l) any other act or omission with respect to the Collateral or any Credit; each of which provisions, if contained in any Credit itself, maybe waived by FOI.

4.4.    If any Credit provides that payment is to be made by any bank, other issuer or correspondent, FOI shall not be responsible for the failure of any of the documents specified in any Credit to come into FOI's possession or for any delay in connection therewith, and Client's obligation to make reimbursement shall not be affected by such failure or delay in the receipt by FOI of any such documents.

4.5    Client agrees that any action taken by FOI, or any action taken by any bank or other issuer or correspondent under or in connection with any Credit, the Collateral and any documents, drafts or acceptances thereunder, shall, notwithstanding any judgement or instructions Client may or may not express to the contrary or inconsistent therewith, be conclusive and binding on Client and shall not create any resulting

Initial  Initial  Initial                                                                                            5

liability to FOI. In furtherance thereof, FOI shall have the full and sole right and authority to: (a) clear and resolve any questions of noncompliance of documents; (b) give any instructions as to acceptance or rejection of any documents or goods; (c) execute any and all applications for steamship or airway guaranties, indemnities or delivery orders; (d) grant any extensions of the maturity of, time of payment for, or time of presentation of, any drafts, acceptances, or documents: and (e) agree to any amendments, renewals, extensions, modifications, changes or cancellations of any of the terms or conditions of any of the applications, Credits, or documents, drafts, or acceptances thereunder or any letters of credit included in the Collateral: all in FOI's sole name, and any bank or other issuer or correspondent shall be entitled to comply with and honor any and all such documents or instruments executed by or received solely from FOI, all without any notice to or any consent from Client.

4.6    Without FOI's express consent and endorsement in writing, Client agrees not to: (a) approve or resolve any questions of non-compliance of documents: (b) give any instructions as to acceptance or rejection of any documents or goods: (c) execute any and all applications for steamship or airway guaranties, indemnities or delivery orders: (d) grant any extensions of the maturity of, time of payment for, or time of presentation of, any drafts, acceptances or documents; or (e) agree to any amendments, renewals, extensions, modifications, changes or cancellations of any of the terms or conditions of any of the applications, Credits, or documents, drafts or acceptances thereunder.

4.7    Any rights, remedies, duties or obligations granted or undertaken by Client to any bank or other issuer or correspondent in any application for any Credit, or any outstanding Factoring Agreement relating to the opening or issuance of any Credit or acceptances or otherwise, shall be deemed to have been granted to FOI and apply in all respects to FOI and shall be in addition to any rights, remedies, duties or obligations contained herein.

4.8    Any duties or obligations undertaken by FOI to any bank or other issuer or correspondent in any application for or in connection with any Credit, including any outstanding Factoring Agreement relating to the opening or issuance of any Credit or otherwise, shall be deemed to have been undertaken by Client and apply in all respects to Client and shall be in addition to the duties or obligations contained herein.

### Section 5.  ADDITIONAL REMEDIES

Upon the occurrence of any Event of Default and at any time thereafter, FOI shall have the right (in addition to any other rights FOI may have under the Factoring Agreement, this Supplement or otherwise), without notice to Client, at any time and from time to time, in FOI's discretion, with or without judicial process or the aid or assistance of others and without cost to FOI:

5.1    To enter upon any premises on or in which any of the Inventory may be located and, without resistance or interference by Client, take possession of the Inventory;

5.2    To complete processing, manufacturing, repair and shipment to customers of all or any portion of the Inventory;

5.3    To sell, foreclose or otherwise dispose of any part or all of the Inventory on or in any of Client's premises or premises of any other party;

5.4    To require Client, at Client's expense, to assemble and make available to FOI any part or all of the Inventory at any place and time designated by FOI;

5.5    To remove any or all of the Inventory from any premises on or in which the same may be located, for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose (and if any of the Inventory consists of motor vehicles, FOI may use Client's registrations and license plates).

**Representations True.**  Client represents and warrants to FOI that all representations and warranties set forth in the Factoring Agreement, as amended hereby, are true and correct.

Initial  Initial  Initial

6

**General Provisions.** This Supplement, the Factoring Agreement, any prior written amendments to the Factoring Agreement signed by FOI and Client, and the other written documents and agreements between FOI and Client set forth in full all of the representations and agreements of the parties with respect to the subject matter hereof and supersede all prior discussions, representations, agreements and understandings between the parties with respect to the subject hereof. Except as herein expressly amended, all of the terms and provisions of the Factoring Agreement, and all other documents and agreements between FOI and Client shall continue in full force and effect and the same are hereby ratified and confirmed.

WITNESS the due execution hereof by the respective duly authorized officers of the undersigned as of the Effective Date.

D.W. AMERICA, INC.

Jae Hun Jung
President

Finance One, Inc.

Dong Bae Kim
Vice President

Guarantor (s)

Jae Hun Jung
Individual

Jae Chul Chung
Individual

Sep Plus, Inc. President
Jae Chul Chung, Individual

Effective Date: April 30, 2007

TJ   J   TtP
Initial  Initial  Initial

7

## Schedule A

| Address | Type of Location | Owner/Operator's Name | Tel. No. |
|---|---|---|---|
| 226 W. 37th Street, Suite 400 New York, NY 10018 | Main Office | Jae Hun Jung | 212-714-9535 |

Initial   Initial   Initial

8

(                    (

## CONTINUING GUARANTEE

THIS GUARANTEE is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, California  90017-5455, with respect to the Indebtedness of D.W. AMERICA, INC. (hereinafter called "D.W. AMERICA").

**1.    Continuing Guarantee.**    For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other address as FOI may direct, in lawful money of the United States, and to perform for the benefit of FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI.  As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined, monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon individually or jointly with others, and regardless of whether recovery thereon is discharged in any bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise from or in connection with FOI's acquisition of a security interest or other interest in any property of D.W. AMERICA, or in any other manner;  and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation amendments, modifications, renewals and extensions that are evidenced by any new or additional instrument, document or agreement;  and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expense of, for or incidental to collection thereof. As used herein, the term "D.W. AMERICA" shall include any successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guarantied hereby.  Guarantor hereby acknowledges and agrees that acceptance by FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA to incur Indebtedness to D.W. AMERICA.  All sums due under this Guarantee shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

**2.    Ledger Debt.** Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security interest, whether as a result of FOI factoring or financing accounts receivable of such third party or otherwise.  Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or financing the accounts receivable of such third parties (consisting if indebtedness and obligations now or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

Guaranty for Collection Date
Factoring Agreement              $EXHIBIT$  C

1

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

**3.     Waivers.**     Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor. FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to

recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

**6.      Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed nay part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

**7.      Right to Attachment Remedy.**      Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall


Initial

have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.    Subordination.**          Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.    Revocation.**          This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.    Independent Liability.**          Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

increase, decrease, or change in membership or stock ownership of Guarantor. Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.    Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party. The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.    Financial Condition of D.W. AMERICA**    Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter. By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.    Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request. Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor. Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.    Representations and Warranties.**    Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or

Guaranty for Collection Date
Factoring Agreement                    6


Initial

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15. Integration.** This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16. Amendment.** The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17. Costs.** Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18. Successors and Assigns.** All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19. Notices.** Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give FOI immediate written notice of any change in his address.

**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this _____ day of April 2007.

GUARANTOR(S):

Name:        Jae Chul Chung

Address:     201 Essex Street
             Oradell, NJ 07649

Telephone:   201-367-0593

S.S.N.:      ▪▪▪▪▪▪▪▪▪

Signature:   _____

Guaranty for Collection Date
Factoring Agreement                    8                              Initial

## ACKNOWLEDGEMENT

STATE OF              )
                           )
COUNTY OF         )

On _____ June 27ᴰ 2007 _____ before me, _____ Alex Eshmoili _____ personally
appeared _____ Jae Chul Chung _____

Personally known to me or proven to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Guaranty.

_____
Notary Public

Alex A Eshmoili
Notary Public, State of New York
No. 01ES6150204
Qualified in Queens County
My Commission Expires 07/24/2010

(                                    (

## CONTINUING GUARANTEE

THIS GUARANTEE is executed by the undersigned (hereinafter jointly and severally called
"Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa
Street, Suite 1100, Los Angeles, California 90017-5455, with respect to the Indebtedness of D.W.
AMERICA, INC. (hereinafter called "D.W. AMERICA").

1.    **Continuing Guarantee.**    For valuable consideration, Guarantor hereby unconditionally
guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other
address as FOI may direct, in lawful money of the United States, and to perform for the benefit of
FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI. As used herein,
the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without
limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and
guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made,
incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held
by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due,
absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined,
monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon
individually or jointly with others, and regardless of whether recovery thereon is discharged in any
bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise
from or in connection with FOI's acquisition of a security interest or other interest in any property of
D.W. AMERICA, or in any other manner; and (b) any and all amendments, modifications, renewals
and extensions of any or all of the foregoing, including without limitation amendments, modifications,
renewals and extensions that are evidenced by any new or additional instrument, document or
agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in
endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any
other person liable thereon (whether or not suit be brought) and any other expense of, for or
incidental to collection thereof. As used herein, the term "D.W. AMERICA" shall include any
successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its
capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee,
custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter
become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all
indebtedness, liabilities and obligations incurred by any such person shall be included in the
Indebtedness guarantied hereby. Guarantor hereby acknowledges and agrees that acceptance by
FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA
to incur Indebtedness to D.W. AMERICA. All sums due under this Guarantee shall bear interest from
the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

2.    **Ledger Debt.** Without limiting the generality of the provisions of Paragraph 1 above,
Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the
matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all
indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or
hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security
interest, whether as a result of FOI factoring or financing accounts receivable of such third party or
otherwise. Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or
financing the accounts receivable of such third parties (consisting if indebtedness and obligations now
or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA
to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

*EXHIBIT  D*

Guaranty for Collection Date
Factoring Agreement                                 1                          __JJ__
                                                                            Initial

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

**3.  Waivers.**    Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor. FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.

(                              (

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to

JJ
Initial

recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

**6.    Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed nay part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

**7.    Right to Attachment Remedy.**    Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall

Guaranty for Collection Date
Factoring Agreement                                    4

JJ
Initial

have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.** **Subordination.** Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.** **Revocation.** This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.** **Independent Liability.** Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

increase, decrease, or change in membership or stock ownership of Guarantor. Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.    Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party. The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.    Financial Condition of D.W. AMERICA**    Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter. By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.    Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request. Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor. Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.    Representations and Warranties.**    Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15.    Integration.**    This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16.    Amendment.**    The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17.    Costs.**    Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18.    Successors and Assigns.**    All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19.    Notices.**    Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith.  Guarantor shall give FOI immediate written notice of any change in his address.

JJ
Initial

**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

        IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this _____ day of April 2007.

GUARANTOR(S):

| | |
|---|---|
| Name: | Jae Hun Jung |
| Address: | 409 4th Street |
| | Palisades Park, NJ 07650 |
| Telephone: | 201-363-1801 |
| S.S.N.: | ~~[redacted]~~ |
| Signature: | _(signature)_ |

## ACKNOWLEDGEMENT

STATE OF                          )
                                  )
COUNTY OF                         )

On 15th May of June, 2007 before me, JAE H. JUNG personally appeared

Personally known to me or proven to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Guaranty.

Notary Public

Chang Y. Han
Notary Public of New Jersey
My Commission Expires Oct. 21, 2007

## CONTINUING GUARANTEE

THIS GUARANTEE is dated April 3, 2008 and is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, California 90017-5455, with respect to the Indebtedness of D.W. AMERICA, INC. (hereinafter called "D.W. AMERICA").

1.      **Continuing Guarantee.**      For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other address as FOI may direct, in lawful money of the United States, and to perform for the benefit of FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI. As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined, monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon individually or jointly with others, and regardless of whether recovery thereon is discharged in any bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise from or in connection with FOI's acquisition of a security interest or other interest in any property of D.W. AMERICA, or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation amendments, modifications, renewals and extensions that are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expense of, for or incidental to collection thereof. As used herein, the term "D.W. AMERICA" shall include any successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guarantied hereby. Guarantor hereby acknowledges and agrees that acceptance by FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA to incur Indebtedness to D.W. AMERICA. All sums due under this Guarantee shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

2.      **Ledger Debt.** Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security interest, whether as a result of FOI factoring or financing accounts receivable of such third party or otherwise. Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or financing the accounts receivable of such third parties (consisting if indebtedness and obligations now or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

*EXHIBIT E*

*KB*
Initial

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

3.    **Waivers.**    Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor. FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.

Guaranty for Collection Date
Factoring Agreement                              2


Initial

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to



recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

**6.      Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed any part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

**7.      Right to Attachment Remedy.**      Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall

Guaranty for Collection Date
Factoring Agreement                          4                                         Initial



have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.    Subordination.**            Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.    Revocation.**       This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.    Independent Liability.**     Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

Guaranty for Collection Date
Factoring Agreement                            5                                     
                                                                                  Initial

increase, decrease, or change in membership or stock ownership of Guarantor. Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.    Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party. The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.    Financial Condition of D.W. AMERICA**    Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter. By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.    Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request. Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor. Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.    Representations and Warranties.**    Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15.    Integration.**    This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16.    Amendment.**    The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17.    Costs.**    Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18.    Successors and Assigns.**    All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19.    Notices.**    Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give FOI immediate written notice of any change in his address.

Guaranty for Collection Date
Factoring Agreement                                    7                                    
                                                                                          Initial

**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this ___4___ day of April 2008.

GUARANTOR(S):

Name:    Kwang B. Park

Address:    3 Scarlet Oak Lane
Paramus, NJ 07652

Telephone:    212-714-9535

S.S.N.:    

Signature:    

Guaranty for Collection Date
Factoring Agreement                 8                      Initial

## ACKNOWLEDGEMENT

STATE OF

COUNTY OF

On _4th April_ before me, _NEVILLE WARREN_ a Notary Public, personally

appeared _KWANG B PARK_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)
Signature

NEVILLE W WARREN
Notary Public - State of New York
NO. 01WA6133981
Qualified in Queens County
My Commission Expires

 **FinanceOne**

**Client Statement**

05/01/2008 To 05/31/2008

As part of the condition in using these online services, you agree that we shall have no liability or responsibility for any errors in any of the information provided in the Online Report System, or for any interruption or malfunction of the System for any reason whatsoever.

CLIENT:    D.W. AMERICA, INC.

CLIENT ID:    43046

| Date | A/R Assigned | Payment Rcvd | CM/DM/ Chargeback | Non-Fac Payments | Reserve Charges | Fee/Int Charges | Disbmnt | Outstanding A/R | Loan Balance | Net A/R Bal |
|------|------|------|------|------|------|------|------|------|------|------|
| 04/30/08 | | | | | | | | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/01/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/02/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/05/08 | 0 | 0 | 0 | 0 | 0 | 3,527.64 | 0 | 587,832.01 | 292,300.91 | 295,531.10 |
| 05/06/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 292,300.91 | 295,531.10 |
| 05/07/08 | 0 | 0 | 14,768.65 | 0 | 0 | 0 | 0 | 573,063.36 | 292,300.91 | 280,762.45 |
| 05/08/08 | 0 | 0 | 0 | 0 | 0 | 45.18 | 0 | 573,063.36 | 292,346.09 | 280,717.27 |
| 05/09/08 | 0 | 0 | 0 | 0 | 0 | 648.46 | 0 | 573,063.36 | 292,994.55 | 280,068.81 |
| 05/12/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 573,063.36 | 292,994.55 | 280,068.81 |
| 05/13/08 | 0 | 54,857.02 | 10,823.73 | 0 | 0 | 0 | 0 | 507,382.61 | 238,137.53 | 269,245.08 |
| 05/14/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 507,382.61 | 238,137.53 | 269,245.08 |
| 05/15/08 | 0 | 17,416.40 | 0 | 0 | 1,000.00 | 1,035.81 | 10,000.00 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/16/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/19/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/20/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/21/08 | 0 | 0 | 0 | 0 | 1.64 | 0 | 0 | 489,966.21 | 232,758.58 | 257,207.63 |
| 05/22/08 | 0 | 0 | 0 | 0 | 0 | 368.06 | 0 | 489,966.21 | 233,126.64 | 256,839.57 |
| 05/23/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 233,126.64 | 256,839.57 |
| 05/27/08 | 0 | 0 | 0 | 0 | 0 | 3,054.36 | 0 | 489,966.21 | 236,181.00 | 253,785.21 |
| 05/28/08 | 0 | 0 | 0 | 0 | 0 | 3,125.27 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/29/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/30/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/31/08 | 0 | 0 | 0 | 0 | 0 | 1,710.98 | 0 | 489,966.21 | 241,017.25 | 248,948.96 |
| **TOTAL** | **0.00** | **72,273.42** | **25,592.38** | **0.00** | **1,001.64** | **13,515.76** | **10,000.00** | | | |

Dilution for this period = 26.15 %

$ExHIBIT$ $F$

 **FinanceOne**          PO Financing Statement          05/01/2008 To 05/31/2008

As part of the condition in using these online services, you agree that we shall have no liability or responsibility for any errors in any of the information provided in the Online Report System, or for any interruption or malfunction of the System for any reason whatsoever.

CLIENT:  D.W. AMERICA, INC.                                    CLIENT ID:  43046

| Date | Fund Amount | Charge | Comm | Accrued Comm | Paid | PO Balance | OutStanding Bal |
|------|-------------|--------|------|--------------|------|------------|-----------------|
| 04/30/08 | | | PREVIOUS LOAN BALANCE | | | 795,062.74 | 795,062.74 |
| 05/01/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/02/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/03/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/04/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/05/08 | 0.00 | 0.00 | 3,527.64 | | 3,527.64 | 795,062.74 | 795,062.74 |
| 05/06/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/07/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/08/08 | 0.00 | 0.00 | 45.18 | | 45.18 | 795,062.74 | 795,062.74 |
| 05/09/08 | 0.00 | 0.00 | 648.46 | | 648.46 | 795,062.74 | 795,062.74 |
| 05/10/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/11/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/12/06 | | | | | | 795,062.74 | 795,062.74 |
| 05/13/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/14/08 | | | | | | 795,062.74 | 795,062.74 |
| 05/15/08 | 0.00 | 0.00 | 1,035.81 | | 11,035.81 | 785,062.74 | 785,062.74 |
| 05/16/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/17/06 | | | | | | 785,062.74 | 785,062.74 |
| 05/18/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/19/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/20/08 | 0.00 | 0.00 | 0.00 | | 0.00 | 785,062.74 | 785,062.74 |
| 05/21/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/22/08 | 0.00 | 0.00 | 368.06 | | 368.06 | 785,062.74 | 785,062.74 |
| 05/23/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/24/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/25/06 | | | | | | 785,062.74 | 785,062.74 |
| 05/26/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/27/08 | 0.00 | 0.00 | 3,054.36 | | 3,054.36 | 785,062.74 | 785,062.74 |
| 05/28/06 | 0.00 | 0.00 | 3,125.27 | | 3,125.27 | 785,062.74 | 785,062.74 |
| 05/29/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/30/08 | | | | | | 785,062.74 | 785,062.74 |
| 05/31/08 | | | | | | 785,062.74 | 785,062.74 |
| **TOTAL:** | **0.00** | **0.00** | **11,804.78** | **0.00** | **21,804.78** | | |

JUDGE SCHEINDLIN

**08 CV 7061**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

FINANCE ONE, INC.,

                  Plaintiff,

      -against-

D.W. AMERICA, INC., JAE CHUL
CHUNG, JAE HUN JUNG and
KWANG B. PARK,

                  Defendants.

----------------------------------------------------------------X

08 CIV.
ECF Case

COMPLAINT



ECEIVE

AUG 0 8 2008

U.S.D.C. S.D. N.Y.
**CASHIERS**

Plaintiff Finance One, Inc., through its attorneys Cinque & Cinque, P. C., as and for its

complaint alleges:

## JURISDICTION AND PARTIES

1. Plaintiff Finance One, Inc. is a corporation organized and existing under the laws of

the State of California, with its principal place of business in California. Plaintiff is authorized to

do business in New York and is engaged in the business, *inter alia*, of providing financing to

companies engaged in the garment industry.

2. Defendant D.W. America, Inc. ("D.W.") is a corporation organized and existing under

the laws of the State of New York, with its principal place of business in New York. D.W. is

engaged in the business, *inter alia*, of manufacturing garments.

3. Defendant Jae Chul Chung ("Chung") is a resident of the State of New Jersey.

4. Defendant Jae Hun Jung ("Jung") is a resident of the State of New Jersey.

5. Defendant Kwang B. Park ("Park") is a resident of the State of New Jersey.

(Defendants Chung, Jung and Park will be collectively referred to herein as the "Individual Defendants.")

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a), in that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of diverse states.

## BACKGROUND

7. By Collection Date Factoring Agreement dated April 30, 2007 between plaintiff and D.W. (the "Factoring Agreement," a copy of which is annexed as Exhibit "A"), D.W. appointed plaintiff as the sole factor of D.W.

8. On or about April 30, 2007 plaintiff and D.W. entered into a trade financing agreement supplement to the Factoring Agreement (the "Supplement," a copy of which is annexed as Exhibit "B)," confirming the terms and conditions of plaintiff's extending of financial accommodations for D.W.'s account.

9. Pursuant to the terms of the Factoring Agreement and Supplement plaintiff agreed to act as D.W.'s sole factor and to make advances to D.W. or for D.W.'s account against the purchase price of D.W.'s accounts, and in consideration of this factoring and these advances D.W. agreed to repay the amount of this factoring and these advances together with interest, factoring commission, fees and collection clearance charges as set forth in the Factoring Agreement.

10. Pursuant to the terms of the Factoring Agreement and Supplement plaintiff factored

2

D.W.'s accounts and provided purchase order financing to D.W.

11. As of August 1, 2008 D.W. owed plaintiff $953,731.09 as follows: (a) on the factoring account, $135,158.04 in principal and $2,350.34 in accrued interest; and (b) on the purchase order financing account, $785,062.74 in principal and $31,159.97 in unpaid commissions.

12. By continuing guarantee dated April __, 2007 (Exhibit "C" hereto), defendant Chung unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff.

13. By continuing guarantee dated April __, 2007 (Exhibit "D" hereto), defendant Jung unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff.

14. By continuing guarantee dated April 4, 2007 (Exhibit "E" hereto), defendant Park unconditionally guaranteed and promised to pay all indebtedness of D.W. to plaintiff. (The three guarantees identified in paragraphs 11, 12 and 13 will be collectively referred to as the "Guarantees").

15. On or about May 27, 2008, June 10, 2008, June 23, 2008 and July 31, 2008 defendants were advised of their default and a demand for payment was made.

## FIRST CLAIM FOR RELIEF AGAINST D.W.

### (Breach of Factoring Agreement and Supplement)

16. Pursuant to the terms of the Factoring Agreement and Supplement, the sum of $953,731.09 was due and owing to plaintiff by D.W. as of August 1, 2008.

17. D.W. has refused and still refuses to pay the obligation due, despite plaintiff's demand.

18. By reason of the foregoing, the amount of $953,731.09 plus applicable interest is

3

presently due and owing to plaintiff.

## SECOND CLAIM FOR RELIEF AGAINST D.W.

### (Account Stated)

19. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "17."

20. Plaintiff rendered monthly statements of account to D.W. pursuant to the terms of the Factoring Agreement.

21. The Client Statement and the PO Financing Statement for the period May 1, 2008 to May 31, 2008 (collectively annexed as Exhibit "F") reflected a balance due plaintiff of $1,026,079.99.

22. D.W. did not make any written objection to these statements of account within thirty (30) days from the date such statement was rendered by plaintiff to D.W.

23. Pursuant to paragraph 6.6 of the Factoring Agreement, the statements of account for the period May 1, 2008 to May 31, 2008 thereby constitute an account stated between plaintiff and D.W., showing a principal amount due plaintiff of $1,026,079.99 as of May 31, 2008.

24. Since May 31, 2008 $105,895.75 was received by plaintiff on account.

25. By reason of the foregoing, D.W. is indebted to plaintiff in the amount of $920,184.24 plus applicable interest and fees arising subsequent to May 31, 2008.

## FIRST CLAIM FOR RELIEF AGAINST THE INDIVIDUAL DEFENDANTS

### (Breach of Guarantees)

26. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

4

"17."

27. The Guarantees of the Individual Defendants provide that they are primary and unconditional and bind the Individual Defendants jointly and severally to pay plaintiff immediately upon the default of D.W.

28. D.W. has defaulted by its failure to pay money owed plaintiff pursuant to the terms of the Factoring Agreement and Supplement.

29. Neither D.W. nor the Individual Defendants have paid the money owed to plaintiff, despite due demand.

30. The Individual Defendants pursuant to the terms of the Guarantees each owe plaintiff $953,731.09 as of August 1, 2008 together with applicable interest and fees.

WHEREFORE, plaintiff demands judgment against defendants as follows:

(a) On the First Claim for Relief against D.W., for damages in the amount of $953,731.09 together with interest and fees on this amount from August 1, 2008 pursuant to the terms of the Factoring Agreement and Supplement;

(b) On the Second Claim for Relief against D.W., for the sum of $920,184.24 together with interest and fees on this amount from May 31, 2008 pursuant to the terms of the Factoring Agreement and Supplement;

( c) On the Third Claim for Relief against the Individual Defendants jointly and severally for damages in the amount of $953,731.09 together with interest and fees on this amount from August 1, 2008 pursuant to the terms of the Guarantees; and

(d) On All Claims for Relief for attorneys' fees, interest and costs pursuant to the terms

of the Factoring Agreement, Supplement and Guarantees, and other relief the Court deems just

and proper.

DATED:  NEW YORK, NEW YORK
        AUGUST 8, 2008

                                CINQUE & CINQUE, P. C.

                                By:
                                    James P. Cinque (JPC 3673)
                                Attorneys for Plaintiff
                                845 Third Avenue, Suite 1400
                                New York, New York 10022
                                Telephone:  (212) 759-5515
                                Telefax:    (212) 759-7737
                                Email:      CINQUE845@aol.com

6

# COLLECTION DATE FACTORING AGREEMENT

This Collection Date Factoring Agreement (this "Agreement"), dated and effective as of the Effective Date, is entered into between Finance One, Inc. ("FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, CA 90017-5455, Telecopy No.: (213) 430-4877, and D.W. AMERICA, INC. ("Client"), whose address is 226 W. 37th Street, Suite 400, New York, NY 10018. Telecopy No.: (212) 714-9740 and will constitute the *terms* upon which FOI will act as the sole factor of Client. Capitalized terms used herein will have the meanings assigned to such terms in Section 12 of this Agreement.

## SECTION 1.    Sale and Approval of Accounts

1.1    Client hereby agrees to sell, assign and transfer to FOI, and FOI hereby agrees to purchase, all of Client's Accounts, with full power to FOI to collect and otherwise deal with such Accounts as the sole and exclusive owner thereof. FOI will purchase as Account on the shortest selling terms for the Purchase Price thereof upon receipt by FOI of the invoice copy evidencing such Account.

1.2    (a)    Client will submit for FOI's credit approval the credit requirements of Client's customers, a description of Client's normal selling terms and such other Information as FOI requests concerning Client's customers. FOI may, in FOI's sole credit judgment, establish credit lines for sales to Client's customers on Client's normal selling terms or on other selling terms approved by FOI by Written Notice. Client may also submit for FOI's credit approval specific orders from Client's customers and FOI may, in FOI's sole credit judgment, approve such orders on a single order credit approval basis. All of FOI's credit approvals will be by Written Notice to Client. All sales to a customer within the credit line established for such customer on Client's normal selling terms or within the single order credit approvals given by FOI for orders from such customer will be Approved Accounts provided that Delivery is completed while the credit line or single order credit approval remains in effect.

        (b)    FOI may amend or withdraw a credit line or single order credit approval at any time prior to Delivery by notifying Client verbally and/or by Written Notice. A single order credit approval will be automatically withdrawn: (i) in the event Delivery is not made on or prior to the expiration date indicated on the single order credit confirmation form FOI sends to Client by Written Notice; or (ii) in the event any change is made in any of the terms of the Account without FOI's prior approval by Written Notice.

        (c)    FOI will have no liability to Client or to any customer for FOI's refusal to credit approve an Account or FOI's withdrawal or amendment of a credit approval. Client must assign accounts to FOI before the payment due date and within the seventh business day from the actual shipment date. Otherwise, FOI's credit approval will be invalid.

1.3    FOI will assume the Credit Risk on all Approved Accounts. FOI will have full recourse to Client for all Non-Approved Accounts.

1.4    In the event that monies are at any time owing by a customer for both Approved Accounts and Non-Approved Accounts, any amount when paid by or credited to the customer will be applied as follows:

        (a)    If FOI issued single order approvals, all amounts paid by or credited to the customer will be deemed applied first to Approved Accounts.

        (b)    If FOI established a credit line for such customer and if the credit line was in force at the time amounts were received from or credited to the customer, such amounts will be deemed applied first to Non-Approved Accounts. If the credit line is canceled, any amount thereafter received or credited will be deemed applied first to Approved Accounts.

1.5    If a bankruptcy or insolvency proceeding is instituted by or against a customer and if FOI agrees by Written Notice to Client to make a claim in such proceeding for Non-Approved Accounts, all amounts

EXHIBIT A

JJ
Initial

distributed to FOI in such proceeding will be shared pro rata between Approved Accounts and Non-Approved Accounts.

**SECTION 2.    Advance, Payments, Commissions, Fees and Ledger Debt**

2.1     FOI will purchase each Account on the longest or shortest selling terms, at FOI's option, and will pay Client as the purchase price the net amount thereof calculated by deducting from the gross amount of each Account the discount, if any, FOI's factoring commission and all credits, including, without limitation, merchandise returns, allowances, and chargebacks and all other charges provided for hereunder. The purchase price less advances, fee and any other amounts due to FOI will be credited to Client's account on the Collection Date.

2.2     Subject to the terms and conditions of the Agreement, FOI may, upon Client's request, and in FOI's sole discretion, make advances to Client or for Client's account against the Purchase Price of Accounts in amounts, in FOI's sole discretion, of up to the following percentages of the Purchase Price of such Accounts: (a) if the Account is an Approved Account, FOI may advance to Client up to eighty percent (80%) of the Purchase Price of such Approved Account; (b) if the Account is a Non-Approved Account, FOI may advance to Client up to fifty percent (50%) of the Purchase Price of such Non-Approved Account; (c) if the Account is a Takeover Account, FOI may advance to Client up to N/A percent (N/A%) of the Purchase Price of such Takeover Account, provided, however, that (i) if a Takeover Account is more than 45 days past due, FOI will not make any advances on any such Takeover Account and (ii) if N/A or more of a single customer's outstanding Takeover Accounts are forty-five (45) days or more days past due, FOI will not make any advances on any Takeover Accounts of such customer. Furthermore, if an invoice for a Non-Approved Account is delinquent over 45 days from the due date, the invoice will not be eligible for advance by FOI.

2.3     If at any time the aggregate Net Amount of Accounts arising from sales to a single customer exceeds an amount equal to fifty percent (50%) of the total accounts receivable outstanding at such time, FOI will not make any advances on any such Accounts in excess of said amount. Furthermore, FOI does not intend to make any advances on any Accounts to the extent that any such advance would cause the aggregate amount of outstanding Obligations to exceed $ 1,500,000.00.

2.4     At the time FOI purchases an Account, FOI will charge Client's account with a factoring commission of one percent (1.00%) of the Net Amount of the Account. On Accounts bearing payment terms in excess of sixty (60) days, the factoring commission will be increased by one quarter of one percent (0.25%) for each thirty (30) days or part thereof that the stated terms exceed sixty (60) days. Furthermore, FOI will consider the payment terms of Net 10 EOM (End of Month) as 45 days. The commission on any invoice evidencing a Receivable purchased hereunder shall not be less than $10.00 under any circumstances ("Minimum Invoice Charge"). In addition, FOI will charge one time charge of N/A percent (N/A%) for the Takeover Account. Furthermore, for all accounts defined by FOI in its sole discretion as international account (the "International Account"), there shall be additional factoring commission up to one percent (1.00%) as the International Account surcharge.

2.5     During each Contract Year (the twelve months immediately following the date hereof or any anniversary thereof), Client agrees to pay FOI factoring commissions aggregating at least $50,000.00 (Minimum Annual Commission). If at the end of any Contract Year, the aggregate of factoring commissions paid by Client is less than the Minimum Annual Commission, then Client shall pay to FOI, or FOI may charge Client's account with, an amount equal to the difference between the Minimum Annual Commission and the factoring commissions actually paid during that Contract Year. **(Initial  JJ  )** If Client terminates this Agreement at any time during a Contract Year or if FOI terminates this Agreement at any time during a contract year upon the occurrence of an Event of Default, Client shall nevertheless remain obligated to pay the Minimum Annual Commission for such Contract Year.

2.6     FOI will charge Client's account FOI's standard wire transfer fee on all wire transfers, charges for returned items and all other bank charges. Client agrees to bear the cost of all filing fees, filing taxes, search reports, legal fees and other charges incurred by FOI in the perfection, protection, preservation

JJ
Initial

and enforcement of FOI's rights in any collateral in which Client has granted FOI a security interest. In addition to the fees and charges under this Agreement, Client agrees to pay FOI, as of the date hereof, a facility fee in the amount of $500.00 for the initial set-up and implementation of Client's account with FOI. Client also agrees to promptly pay all fees, costs and expenses (including, without limitation, attorneys fees and allocated costs of internal counsel) incurred by FOI in connection with the creation, or administration of this Agreement or any related instructions, documents or agreements, including the negotiation and documentation of any waivers, forbearances, amendments or other modifications relating to this Agreement or any such related agreements. All fees, costs and expenses will be part of the Obligations, will be payable on demand and will be secured by any collateral in which Client has granted FOI a security interest. FOI may also, at FOI's option, charge Client's account for all amounts owing by Client to FOI under this Agreement and for all other Obligations.

2.7     FOI may, in its sole discretion, approve credits for Client, in amount determined from time to time by FOI, to enable Client to purchase goods or services from other factoring clients of FOI (the indebtedness owing by Client for such purchases is hereafter referred to as "Ledger Debt"). There would be no charge for such credit approval to the extent that Client did not pay ledger debt when due. FOI would have the right to pay such amounts and to charge such payments to Client's account.

## SECTION 3.     Interest and Collection Clearance Charge.

3.1     Client will pay FOI interest on the Daily Balance. Interest will be calculated daily at a rate per annum equal to one and one half of one percent (1.50%) plus the Base Rate (the "Interest Rate") and will be charged to Client's account on Collection Date. The Interest Rate will also be charged to Client on all other obligations, except those specifying a different rate, from the date incurred through the date paid. Notwithstanding the foregoing, the Interest Rate shall never be greater than the highest rate permitted by law. Any publicly announced decrease or increase in the Base Rate will result in an adjustment to the Interest Rate on the next business day. Notwithstanding the foregoing, Client understands and agrees that the Base Rate shall never be less than six percent (6.00%) per annum. After the occurrence of an Event of Default and for so long as such Event of Default continues, all the Obligations will, at FOI's option, bear interest at a rate per annum equal to five percent (5.00%) plus the Interest Rate. Interest will be calculated on the basis of a 360-day year for the actual number of days elapsed. In no event shall the rate charged hereunder exceed the highest rate permitted under applicable law. In the event, however, that FOI receives interest hereunder in excess of the highest rate permissible, Client agrees that Client's sole remedy shall be to seek repayment of such excess, and Client hereby waives any and all other rights and remedies which may be available to Client under law or in equity.

3.2     If an Account or any payment is charged back to Client after the Collection Date or Approved Payment Date, as applicable, Client will pay FOI interest at the Interest Rate on the Net Amount of such Account or on such payment from such date to the charge back date.

3.3     To allow for collection clearance on all checks and other payments remitted by Client's customers, Client will, in addition to interest, pay FOI a collection clearance charge computed as follows: (a) total cash collections for the month, multiplied by (b) 4 business days, multiplied by (c) the Interest Rate, divided by (d) 360 days.

## SECTION 4.     Representations, Warranties and Covenants

4.1     Client represents, warrants and covenants as to each Account that, at the time of its creation, the Account is a valid, bona fide account, representing an undisputed indebtedness incurred by the named customer for goods actually sold and delivered; there are no setoffs, offsets or counterclaims, genuine or otherwise, against the Account; the Account does not represent sales to consumers of goods to be used for personal, family or household purposes; all amounts are due in United States Dollars; the Account does not represent a sale to any of Client's subsidiaries, affiliates, directors, officers, agents, stockholders, or employees, or a consignment, guarantied sale, or bill and hold transaction, or a cash on delivery sale; no agreement exists permitting any deduction or discount (other than the discount stated on the invoice); Client is the lawful owner of the Account and has the right to sell and assign the same to FOI; the Account

Collection Date Factoring Agreement          3

is free of all security interests, liens and encumbrances (including tax liens) other than those in favor of FOI, and the Account is due and payable in accordance with its terms.

4.2     Client will not grant or suffer to exist in favor of any party other than FOI any lien upon or security interest in Client's inventory.

4.3     Client represents and warrant that Client's legal name is exactly as set forth on the signature page of this Agreement. Client is a solvent corporation; duly incorporated and in good standing under the laws of the State of New York and qualified in all States where such qualification is required; the execution, delivery and performance of this Agreement have been duly authorized and are not in contravention of any applicable law, Client's corporate charter or by-laws or any agreement or order by which Client is bound; Client is not, to the best of Client's knowledge, in violation of any law, ordinance, rule, regulation, order or other requirement of any government or any instrumentality or agency thereof.

4.4     Client will not change Client's corporate name or the location of Client's office or open any new offices without giving FOI at least thirty (30) days prior Written Notice. At the present time, Client carries on business at the following address(s):

226 W. 37th Street, Suite 400, New York, NY 10018

4.5     All books and records pertaining to the Accounts or to any inventory owned by Client will be maintained solely and exclusively at the above address or the addresses listed in Section 4.4 hereof and no such books and records will be moved or transferred without giving FOI thirty (30) days prior Written Notice.

4.6     After FOI's request, Client will hold all returned, replevined or reclaimed goods relating to Accounts coming into Client's possession in trust for FOI and all such goods will be segregated and identified as held in trust for FOI's benefit and Client will, at FOI's request, and at Client's expense, deliver such goods to such place or places as FOI may designate.

4.7     The trade names or styles set forth below are the only trade names or styles under which Client transacts business or has transacted business during the last five (5) years; Accounts sold to FOI hereunder and represented by invoices bearing such trade names or styles are wholly owned by Client; the undertakings, representations and warranties made in connection therewith will be identical to and of the same force and effect as those made with respect to invoices bearing Client's corporate name; Client's use of any trade names or styles is in compliance with all laws regarding the use of such trade names or styles. Client will give FOI thirty (30) days prior Written Notice of the change of any trade name or style or Client's use of any new trade name or style.

Trade name or styles: N/A

Client hereby assigns, transfers, and conveys to FOI, effective upon the occurrence of any Event of Default hereunder, the non-exclusive right and license to use all trade names and trade styles owned or used by Client together with any goodwill associated therewith, all to the extent necessary to enable FOI to realize on any assets of Client in which Client has granted FOI a security interest. Such right and license is granted free of charge without requirement that any monetary payment whatsoever is made to Client or third party by FOI.

4.8     Discounts, credits and allowances on Accounts may be issued, granted or allowed by Client to customers and returns may be accepted by Client until FOI notifies Client to the contrary by Written Notice. Such discounts, credits or allowances once issued may be claimed only by the customer. Client will issue and assign to FOI all full credit memos relating to credits on Accounts and any other credit memos FOI requests relating to credits on Accounts immediately upon FOI's request but in no event more than two (2) weeks from the date on which such credits are granted to the customers.

JJ
Initial

4.9      To the best of Client's knowledge, there are no judgments outstanding against or affecting Client, its officers, directors or affiliates or any of Client's property and there are no actions, charges, claims, demands, suits, proceedings, or governmental investigations now pending or threatened against Client or any of Client's property.

4.10     Client agrees that no provision in this Agreement and no course of dealing between the parties shall be deemed to create any fiduciary duty by FOI to Client.  Client agrees that neither FOI nor any of FOI's affiliates, officers, directors, shareholders, employees, attorneys, or agents shall have any liability with respect to, and Client hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by Client in connection with, arising out of, or in any way related to this Agreement or any of the transactions contemplated by this Agreement.  Client hereby waives, releases, and agrees not to sue FOI or any of FOI's affiliates, officers, directors, shareholders, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to this Agreement or any of the transactions contemplated by this Agreement.

4.11     Client agrees to execute financing statements and any and all other instruments and documents that FOI may request to perfect, protect, establish or enforce the security interests granted hereunder or other provisions hereof.  Client hereby authorizes FOI to file such financing statements without Client's signature, signed only by FOI as a secured party or to use a reproduction of this agreement to reflect the security interests granted hereunder.

## SECTION 5.     Disputes, Chargebacks and Reserves

5.1      With respect to any Account, upon the occurrence of a breach of any of the representations or warranties contained in Section 4.1, or upon the assertion by a customer of a Dispute, such Account may, at FOI's option, be charged back to Client.

5.2      Client will notify FOI immediately in the event that a customer alleges any Dispute, or returns or desires to return any goods purchased from Client relating to an Account.  FOI may but is not obligated to settle, compromise, adjust or litigate all such Disputes or returns upon such terms as FOI deem advisable. If an unadjusted Dispute delays the payment of any Approved Account when due, FOI will have the right to charge back to Client that Account.

5.3      FOI may, at FOI's option, charge back to Client all amounts owing on Non-Approved Accounts which are 45 or more days past due.  FOI has the sole discretion to decide not to purchase such Accounts in the future.

5.4      Client shall purchase promptly all Accounts charged back by FOI, provided, however, that until payment by Client to FOI of all monies due with respect to such charged back account, title shall pass to Client subject, however, to FOI's security interest therein.  Client agrees to indemnify and save FOI harmless from and against any and all loss, costs and expenses caused by or arising out of disputed Accounts, including, but not limited to, collection expenses and attorney's fees incurred with respect thereto.

5.5      FOI may maintain such reserves as FOI, in FOI's sole discretion, deems advisable as security for the payment and performance of the Obligations, including, without limitation, (i) reserves for the amount of any Account which is subject to a Dispute, (ii) reserves for the amount of any Approved Account from any single customer that is greater than fifty percent (50%) of all Accounts, (iii) reserves for the amount of any Non-Approved Account that is 45 or more days past due, (iv) reserves for the amount of any Non-Approved Accounts from any single customer that is greater than fifty percent (50%) of all Accounts and (v) reserves for that amount of all Non-Approved Accounts from any single customer if twenty five percent (25%) or more of such customer's outstanding Accounts are 45 or more days past due.

Collection Date Factoring Agreement          5                                          JJ
                                                                                      Initial

**SECTION 6.    Administration**

6.1    Client will, from time to time, (i) execute and deliver to FOI confirmatory schedules of Accounts assigned to FOI (each an Assignment Schedule), together with one copy of each invoice, acceptable evidence of shipment and such other documentation and proofs of delivery as FOI may require. Each invoice relating to an Account and all copies thereof will bear a notice, in form satisfactory to FOI, that the Account has been sold and assigned to and is payable only to FOI. Client agrees that Client will not change such notice on invoices and will not direct its customers to pay Client or any third party amounts due under invoices. Client agrees to prepare and mail all invoices relating to Accounts, but FOI may do so at FOI's option. Client agrees to execute and deliver to FOI such further instruments of assignment, financing statements and instruments of further assurance as FOI may reasonably require. Client authorizes FOI to execute on Client's behalf and file such UCC financing statements as FOI may deem necessary in order to perfect and maintain the security interests granted by Client in accordance with this Agreement. Client further agrees that FOI may file this Agreement or a copy thereof as such UCC financing statement.

6.2    If any remittances are made directly to Client, Client's employees or agents, Client will act as trustee of an express trust for FOI's benefit, hold the same as FOI's property and deliver the same by the next business day to FOI forthwith in kind. Client agrees to pay five percent (5.00%) of the amount of any payment that has been received and not delivered to FOI on the next business day following the date of receipt by Client.

6.3    As owners and assignees of the Accounts, FOI shall have the right to bring suit, in Client's name or FOI's name, and generally shall have all other rights respecting said Accounts, including without limitation the right to: accelerate or extend the time of payment, settle, compromise, release in whole or in part any amounts owing on any Accounts and issue credits in Client's name or FOI's name. FOI and/or such designee as FOI may from time to time appoint are hereby appointed Client's attorney-in-fact to endorse Client's name on any and all checks or other forms of remittances received by FOI where such endorsement is required to effect collection and to transmit notices to customers, in Client's or FOI's name, that amounts owing by them have been assigned and are payable directly to FOI; this power, being coupled with an interest, is irrevocable.

6.4    Client shall permit FOI and any authorized representatives designated by FOI to visit and inspect any of the properties of Client, including its financial and accounting records, and to make copies and take extracts therefrom, and to discuss its affairs, finances, and business with its officers at such times during normal business hours and as often as FOI requests. FOI may, at any time after the occurrence of an Event of Default, remove from Client's premises all such records, files and books relating to Accounts. Client will pay FOI, upon demand, all costs and expenses, including, without limitation, the fees and disbursements of counsel and the cost of all searches, filings, recordation or registration fees and taxes, periodic field examinations of the FOI's collateral or Client's operations (plus a charge of $750 or prevailing market rate per person per day for FOI's examiners in addition to the reimbursement for their expenses), which FOI may incur at any time in perfecting, protecting, enforcing or administering FOI's rights hereunder or in any collateral in which FOI has a security interest or in the defense or prosecution of any action or proceeding concerning any matter growing out of or in connection with this Agreement and/or any security interest herein granted to FOI.

6.5    If FOI determines that the credit standing of a customer has deteriorated after FOI has assumed the Credit Risk on an Account, Client will, at FOI's request, exercise such rights as Client may have to reclaim or stop the goods in transit, and Client hereby grants to FOI the right to take such steps in Client's or FOI's name. At FOI's request, all, returned, reclaimed or repossessed merchandise, inventory or goods relating to Accounts, shall be set aside by Client, marked with FOI's name and held for FOI's account as owner and assignee. If FOI so elects, Client will deliver such goods to FOI or sell same for FOI's account. FOI shall, however, have the right to sell or otherwise dispose of any such goods on terms

Collection Date Factoring Agreement          6          <span style="float:right">JJ<br>Initial</span>

acceptable to FOI without notice to Client, or if notice s required by law, five (5) days notice shall constitute reasonable notification.

6.6     FOI will render a monthly statement of account to Client within twenty (20) days after the end of each month. Such statement of account will constitute an account stated unless Client makes written objection thereto by Written Notice within thirty (30) days from the date such statement is rendered to Client.

6.7     Client will maintain a system of accounting established and administered in accordance with sound business practice to permit preparation of financial statements in conformity with GAAP. Client will promptly furnish FOI with such statements prepared by or for Client showing Client's financial condition and the results of Client's operations, including without limitation for each of Client's fiscal years, as soon as available but not later than sixty (60) days after the end of each fiscal year, Client's balance sheet, income statement and the related statement of cash flows for and as at the end of such fiscal year and a statement of stockholder's equity for such fiscal year, compiled by Client's independent certified public accountants and certified by Client to be prepared in accordance with GAAP and to fairly present Client's financial position and results of operations for such period. Client will also furnish FOI with such financial statements for the fiscal mid-year end as soon as available but not later than sixty (60) days after the end of each fiscal mid-year. In addition, the Client shall furnish additional financial statements and information as FOI may request verbally or by Written Notice from time to time within reasonable time from the date of such requests. Client authorizes FOI to communicate directly with Client's independent certified public accountants and authorizes such accountants to discuss Client's financial condition and statements directly with FOI.

6.8     Client authorizes FOI to disclose such information as FOI deems appropriate to persons making credit inquiries about Client.

## SECTION 7.    Collateral Security

As collateral security for all Obligations, Client hereby assigns and grants to FOI a continuing security interest in all of the following property, whether now owned by Client or hereafter acquired by Client or arising in Client's favor: (i) Accounts; (ii) general intangibles; (iii) monies, securities and other property now or hereafter held or received by, or in transit to FOI from or for Client, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all of Client's deposits and credit balances in FOI's possession; (iv) all inventory, work in process, raw material; (v) all equipment, fixtures, and furniture (vi) books, records and other property at any time evidencing or relating to any of the foregoing property; and; (vii) proceeds of any of the foregoing property including, without limitation, the proceeds of any insurance policies covering any of the foregoing property. Recourse to the collateral security herein provided will not be required, and Client will at all times remain liable for the payment and performance of the Obligations upon demand by FOI.

## SECTION 8.    Events of Default

The occurrence of any of the following acts or events will constitute an Event of Default: (a) if Client fails to make payment of any of the Obligations when due; (b) if Client fails to make any remittance required by this Agreement; (c) if Client commits any breach of any of the terms, representations, warranties, covenants, conditions or provisions of this Agreement, or of any present or future supplement or amendment hereto or of any other agreement between FOI and Client; (d) if Client becomes insolvent or unable to meet Client's debts as they mature; (e) if Client fails to pay when due any material obligations or liabilities owing by Client to any person or entity (including without limitation, any United States and state taxes); (f) if Client delivers to FOI a false financial statement or if any representation, warranty, certification, or other statement made by Client to FOI is false in any material respect when made; (g) if Client calls, or has called by a third party, a meeting of creditors; (h) if any bankruptcy proceeding, insolvency arrangement or similar proceeding is commenced by or against Client; (i) if Client suspends or discontinues doing business for any reason; (j) if a receiver or trustee of any kind is appointed for Client or any of Client's property; (k) if any guarantor of Client's Obligations dies or becomes insolvent or has

commenced by or against such guarantor any bankruptcy proceeding, insolvency arrangement or similar proceeding; (l) if any guaranty of Client's Obligations is terminated; (m) if any change of ownership occurs with respect to more than forty (40%) percent of Client's capital stock; or (n) if a notice of lien, money judgment, levy, assessment, seizure or writ, or warrant of attachment is entered or filed against Client or with respect to the Accounts or any other collateral in which Client has granted FOI a security interest; or (0) if Client sells, leases, transfers or otherwise disposes of all or substantially all of Client's property or assets, or consolidates with or merges into or with any corporation or entity.

Upon the occurrence and during the continuance of an Event of Default, FOI will have the right to terminate this Agreement and all other arrangements existing between FOI forthwith and without notice, and the Obligations will mature and become immediately due and payable and FOI will have the right to withhold any further payments to Client until all Obligations have been paid in full. In addition FOI will have all of the rights of a secured party under the Uniform Commercial Code, including, without limitation, the right to take possession of any collateral in which FOI has a security interest and to dispose of same at public or private sale and Client will be liable for any deficiency. FOI will not be required to proceed against any collateral but may proceed against Client directly. FOI shall also have the right, as of the effective termination date, or as of any immediate termination as described above, if there has been any breach of this Agreement, to notify the postal authorities to change the address on all mail sent out to Client to a post office box under FOI's control; if notice is required by law, five (5) days notice shall constitute reasonable notification.

If either party to this Agreement shall bring any action for any relief against the other, declaratory or otherwise, arising out of this Agreement, the losing party shall pay to the prevailing party a reasonable sum for attorney fees incurred in bring such suit and/or enforcing any judgment granted therein, all of which shall be deemed to have a accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment. For the purpose of this section, attorney fees shall include, without limitation, fees incurred in the following: (1) postjudgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examination; (4) discovery; and (5) bankruptcy litigation.

## SECTION 9.    Term and Termination

The term of this Agreement shall be one year from the date hereof and shall be automatically renewed for successive like periods of the same duration. Both Client and FOI shall have the right to terminate this Agreement at the end of the first Contract Year or at the end of any successive Contract Year by giving 60 days' prior Written Notice thereof; provided, however, that Client will not terminate this Agreement so long as Client is indebted or obligated to FOI in connection with any other agreements between FOI and Client. Furthermore, if the Client terminates this contract prior to the end of each anniversary date, the client agrees to pay an early termination penalty of $3,000.00.

Notwithstanding any such Written Notice of termination, Client's and FOI's respective rights and obligations arising out of transactions having their inception prior to the date of termination of this Agreement and all terms, provisions and conditions hereof, including but not limited to, the security interests hereinabove granted to FOI (including Accounts arising, acquired or created after the date of termination of this Agreement), will continue in full force and effect until all Obligations have been paid in full. All of the representations, warranties and indemnities and covenants made by Client herein will survive the termination of this Agreement.

## SECTION 10.    Modifications, Waivers and Miscellaneous Provisions

This Agreement may not be changed or terminated orally; it constitutes the entire agreement between Client and FOI and will be binding upon Client's and FOI's respective successors and assigns, but may not be assigned by Client without FOI's prior written consent. No delay or failure on FOI's part in exercising any right, privilege, or option hereunder will operate as a waiver thereof or of any other right, privilege or option. No waiver whatsoever will be valid unless in a Written Notice, signed by FOI, and then

only to the extent therein set forth. If any term or provision of this Agreement is held invalid under any statute, rule or regulation of any jurisdiction competent to make such a decision, the remaining terms and provisions will not be affected, but will remain in full force and effect.

Any Written Notice to be given under this Agreement will be in writing addressed to the respective party as set forth in the heading to this Agreement and will be personally served, telecopied or sent by overnight courier service or United States mail and will be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by telecopy, on the date of transmission if transmitted on a Business Day before 4:00 p.m. (Los Angeles time) or, if not, on the next succeeding Business Day; (c) if delivered by overnight courier, two (2) days after delivery to such courier properly addressed; or (d) if by U.S. Mail, four (4) Business Days after depositing in the United States mail, with postage prepaid and properly addressed.

### SECTION 11.    Governing Law, Venue and Waiver of Jury

THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES. CLIENT HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF LOS ANGELES, THE STATE OF CALIFORNIA. IF CLIENT PRESENTLY IS, OR IN THE FUTURE BECOMES, A NON-RESIDENT OF THE STATE OF CALIFORNIA, CLIENT HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO CLIENT, AT CLIENT'S ADDRESS APPEARING IN FOI'S RECORDS AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID.

**WAIVER OF JURY TRIAL. CLIENT AND FOI HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY DEALINGS BETWEEN CLIENT AND FOI RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. CLIENT AND FOI ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF CLIENT HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH OF CLIENT AND FOI WILL CONTINUE TO RELY ON THE WAIVER IN THE RELATED FUTURE DEALINGS BETWEEN CLIENT AND FOI. CLIENT AND FOI FURTHER WARRANT AND REPRESENT THAT THEY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RESPECTIVE JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.**

### SECTION 12.    Definitions

"Accounts" -- All presently existing or outstanding and all hereafter created or acquired accounts (as that term is defined in the UCC), contract rights, documents, notes, drafts and other forms of obligations owed to or owned by Client arising or resulting from the sale of goods or the rendering of services by Client, all general intangible relating thereto, all proceeds thereof, all guaranties and security therefor, and all goods and rights represented thereby or arising therefrom, including, but not limited to, returned, reclaimed and repossessed goods and the rights of stoppage in transit, replevin and reclamation.

"Approved Account" -- An Account with respect to which FOI has issued a credit approval which has not subsequently been withdrawn.

"Base Rate" -- The highest prime rate publicly announced from time to time by Wall Street Journal as its prime or base rate (or equivalent). Notwithstanding the foregoing, the Base Rate shall never be lower than six percent (6.00%) per annum for this Agreement.

Collection Date Factoring Agreement          9

Initial

"Business Day" -- Any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the Federal Laws.

"Collection Amount" -- The amount received by FOI from a customer in payment of an Account up to the Net Amount of such Account.

"Collection Date" -- (a) The date on which FOI receives payment of an Account; or (b) In the event an Approved Account remains unpaid, the date which is the last day of the fourth month following its longest maturity date after the due date of such Account, provided that the customer has not asserted a Dispute.

"Credit Risk" -- The risk that a customer will be financially unable to pay an Account at maturity, provided that the merchandise has been received or services rendered and accepted by the customer without Dispute. Customer's financial inability to pay does not include non-payment of customer's obligation due to a consequence of enemy attack, civil commotion, strikes, lockouts, the act or restraint of public authorities, acts of God or force majeure.

"Contract Year" -- The twelve month period commencing on the date of this Agreement or on any anniversary thereof.

"Costs" -- All costs, fees and expenses (including attorney's fees and the allocated costs of internal counsel) incurred by FOI in connection with (i) the creation, negotiation or administration of this Agreement, any related instrument, document or agreement, or any waiver, forbearance, amendment or modification thereof (ii) the perfection, protection, preservation or enforcement of FOI's rights in any collateral in which FOI has been granted a security interest and (iii) all filing fees, filing taxes or search reports.

"Daily Balance" -- The outstanding balance of all advances made by FOI to Client or for Client's account in accordance with subsection 2.2 hereof less all amounts credited to Client's account in accordance with subsection 2.1 hereof.

"Delivery" -- The delivery of goods or performance of services in accordance with the terms agreed to in writing between Client and a customer, provided that if no such terms are specified in writing, delivery shall mean delivery of goods or performance of services at the customer's place of business.

"Dispute" -- A dispute or claim, bona fide or otherwise, as to price, terms, quantity, quality, Delivery, or any cause or defense to payment of an Account whatsoever other than financial inability of a customer to pay the Account.

"Effective Date" -- The date set forth below FOI's signature hereto.

"GAAP" -- Generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Boards of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"FOI Clients" -- Any persons, corporations, partnerships, companies, associations or entities (other than Client) which have entered into factoring, inter-credit or financing agreements with any of FOI's offices.

"Ledger Debt" -- Indebtedness owing by Client to FOI as a result of FOI's purchases of invoices evidencing sales to Client by FOI Clients.

"Misdirected Payment" -- A payment that has been received by Client and not delivered in kind to Finance One within two (2) business days following the date of receipt by Client.

Initial

"Net Amount" -- The gross face amount of an Account less the discount offered by Client and taken by FOI at the time FOI purchases such Account.

"Non-Approved Account" -- An Account with respect to which FOI has not issued a credit approval or has subsequently withdrawn a credit approval.

"Obligations" -- All loans, advances, debts, liabilities, obligations, covenants and duties owing by Client to FOI, direct of indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including, without limitations, Ledger Debt and indebtedness arising under any guaranty made by Client for FOI's benefit or issued by FOI on Client's behalf.

"Purchase Price" -- An amount equal to the Net Amount of an Account, less factoring commissions, credits (including, without limitation, merchandise returns and credit memos), charge backs, allowances, and all other charges provided thereunder.

"Takeover Account" -- An Account created or existing prior to the Effective Date.

"UCC" -- The Uniform Commercial Code as in effect on the date hereof in the New York, as amended from time to time, and any successor statute.

"Written Notice" -- Notice given in writing in accordance with Section 10 of Agreement.


Witness the due execution hereof by the respective duly authorized officers of the undersigned as of the Effective Date.


**D.W. AMERICA, INC.**

Jae Hun Jung
President

Effective Date: 4/30/2001


**Finance One, Inc.**

Dong Bae Kim
Vice President

JJ
Initial

# Trade Financing Agreement
## Supplement To Collection Date Factoring Agreement

**Client:**    **D.W. AMERICA, INC. ("Client")**
          **226 W. 37th Street, Suite 400**
          **New York, NY 10018**

**Factor:**    **Finance One, Inc. ("FOI")**
          **888 S. Figueroa Street, Suite 1100**
          **Los Angeles, CA 90017-5455**

This **Trade Financing Agreement** (hereinafter called "Supplement") entered into between Finance One, Inc. ("FOI") and D.W. AMERICA, INC. ("Client" and is a supplement to the Collection Date Factoring Agreement between them dated April 30, 2007, as amended, if at all (the "Factoring Agreement"). This Supplement is (a) hereby incorporated into the Factoring Agreement, (b) made a part thereof and (c) is subject to the other terms, conditions, covenants and warranties thereof. All terms, including capitalized terms, used herein shall have the meanings ascribed to them respectively in the Factoring Agreement, unless otherwise defined in this Supplement.

This Supplement will confirm the terms and conditions upon which FOI may, from time to time in FOI's sole discretion, assist Client in establishing or opening foreign or domestic letters of credit and extend other financial accommodations for Client's account. Accordingly, FOI and Client hereby agree as follows:

## Section 1. CREDIT ACCOMMODATIONS

1.1    FOI may, in FOI's sole discretion, from time to time, for Client's account, at Client's request, provide one or more of the following financial accommodations to Client or Client's designee(s): (a) issue, open, or cause the issuance or opening of letters of credit or purchase or other guaranties for the purchase of goods and services in the ordinary course of Client's or any such designee's business or for any other purpose approved by FOI, (b) assist Client in establishing or opening letters of credit for such purposes by indemnifying the issuer thereof or guaranteeing Client's payment or performance to such issuers in connection therewith, (c) make payments for Client's or such designee's accounts in connection with such purchases, (d) send monies by wire or issue checks at Client's or such designee's request in connection with such purchases, and/or (e) issue or guarantee and acceptances relating to the foregoing or otherwise. All such letters of credit or purchase or other guaranties and other financial accommodations are referred to herein individually as a "Credit" and collectively as "Credits".

1.2    The opening or issuance of any Credit shall at all times and in all respects be in FOI's sole discretion. The amount and extent of any Credit and the terms, conditions and provisions thereof shall in all respects be determined solely by FOI and shall be subject to change, modification and revision by FOI, in FOI's sole discretion, at any time and from time to time. The maturity of each Credit Shall not exceed sixty (60) days after opening or issuance, except in FOI's sole discretion.

1.3    Client shall, at FOI's request in connection with the opening, issuance, continuance of, or any payment with respect to, any Credit, deposit with FOI cash or other additional collateral satisfactory to FOI, in such amounts as FOI, in FOI's sole discretion, may require from time to time, whether prior to the opening or issuance of any Credit or at any time or times thereafter. Client's failure to make any such deposit within five (5) days after demand therefor shall constitute an Event of Default. No interest shall be paid to Client on any cash or other collateral so deposited, unless otherwise agreed by FOI.

1.4    Without limiting FOI's discretion, in any way, with respect to the extension of factoring or other financial accommodations pursuant to the Factoring Agreement, this Supplement or otherwise, as a condition

Initial  Initial  Initial

*EXHIBIT B*

1

to the opening or issuance of any Credit by FOI, Client shall have additional loans available to Client pursuant to the formulas and limitations set forth in the Factoring Agreement or any supplement thereto, on the date of the proposed opening or issuance thereof, in an amount equal to or greater than one hundred percent (100 %) of the amount of the proposed Credit to be opened or issued. FOI may, in its sole discretion, however, waive this requirement from time to time.

1.5    Except in FOI's sole discretion, the aggregate maximum amount of loans which might otherwise be available to Client, pursuant to the formulas and limitations set forth in the Factoring Agreement or any supplement thereto, shall be reduced from time to time by an amount equal to one hundred percent (100 %) of the then outstanding aggregate amount of all Credits and all other commitments and obligations made or incurred by FOI with respect thereto.

1.6    Except in FOI's sole discretion, the amount of all Credits and all other commitments and obligations made or incurred by FOI for Client's account in connection therewith shall not exceed $1,500,000.00 in the aggregates at any time outstanding.

1.7    All indebtedness, liabilities, expenses and Obligations of any kind paid, arising or incurred by FOI in connection with this Supplement, any Credit or any documents, drafts and acceptances thereunder, whether present or future, whether arising or incurred before or after termination or non-renewal of this Factoring Agreement shall be incurred solely as an accommodation to Client and for Client's account and constitute part of the Obligations, including without limitation: (a) all amounts due or which may become due under any Credit or any drafts or acceptances thereunder: (b) all amounts charged or chargeable to FOI or Client by any bank or other issuer of any Credit or any correspondent which opens, issues or is otherwise involved with any Credit, including without limitation, all fees, expenses and commissions: (c) FOI's fees, expenses and commissions: (d) duties, freight, taxes, costs, insurance and all such other charges and expenses which may pertain directly or indirectly to any Obligations or to the Credits or goods or documents relating thereto: and (e) all other indebtedness and obligations owed by Client to FOI pursuant to, in connection with or arising from this Supplement, the Credits or any drafts or acceptances relating thereto.

1.8    All such Obligations shall accrue interest at the then effective governing rate provided for in the Factoring Agreement, commencing on the date any payment is made, or obligation incurred, by FOI and all such Obligations shall, together with interest thereon and other sums owed by Client to FOI hereunder, be payable and evidenced as provided in the Factoring Agreement or any supplement thereto.

1.9    In addition to all other fees and expenses payable under the Factoring Agreement and this Supplement, and any charges, fees, or expenses charged by any bank or other issuer or correspondent in connection with any Credit, Client agrees to pay to FOI the following commissions for FOI's services hereunder, which shall be due and payable on the opening or issuance of each Credit or, if the original term is extended, on the extension thereof: (a) a charge of the greater amount of $300 or one and one half of one percent (1.50%) of 'the face amount of any Credit less Client's deposit' for up to the initial thirty (30) days of the term thereof and an additional charge of the greater amount of $300 or one and one half of one percent (1.50%) of 'such face amount of Credit less Client's deposit' for each additional thirty (30) days, or any portion thereof, of the original term or any extension thereof and (b) in addition to any bank charges, a charge for each thirty (30) day period, or any portion thereof, of the original or any extended term of any outstanding drafts or acceptance equal to the greater amount of $300 or one and one half of one percent (1.50 %) of 'the face amount of Credit less Client's deposit' thereof. Client also agrees to pay to FOI a handling fee of three hundred dollars ($300) for occurrence of any transactions described in Section 1.1. In addition, Client agrees to pay to FOI, FOI's and any bank's, other issuer's or correspondents' customary charges for amendments, extensions and administration relating to any Credit, which charges shall be due and payable immediately on the day of incurrence and at FOI's option may be charged to any of Client's account(s) maintained by FOI. After the occurrence of an Event of Default and for so long as such Event of Default continues, all the Obligations under this Trade Financing Agreement will, at FOI's option, bear a charge of the greater amount of $1,000 or five percent (5.00%) of 'the total face amount of outstanding Credit less Client's deposit' for each additional thirty (30) days.



Initial  Initial  Initial

2

1.10    Nothing contained herein shall be deemed or construed to grant Client any right, power or authority to pledge FOI's credit in any manner. FOI shall have no liability of any kind with respect to any Credit opened or issued by a bank or other issuer or any draft or acceptance with respect thereto unless and until FOI shall have first duly executed and delivered FOI's guarantee or indemnification in writing with respect thereto, as provided herein.

## Section 2. ADDITIONAL SECURTY INTEREST

2.1    As additional security for the prompt performance, observance and payment in full of all Obligations, Client hereby grant to FOI a continuing security interest in, a lien upon, and a right of set off against, and Client hereby assigns, transfers, pledges and sets over to FOI all of the following property acquired by Client in connection with any Credit or otherwise owned by Client , whether now owned or hereafter acquired (which, together with other property subject to security interests or liens in FOI's favor pursuant to the Factoring Agreement, any supplement thereto, or otherwise, is hereinafter referred to as the " Collateral"): (a) all raw materials, work-in-process, finished goods and all other inventory and goods of whatsoever kind or nature, wherever located, including inventory or goods in transit ("Inventory"), including without limitation, all wrapping, packaging, advertising and shipping materials, and all other goods consumed in Client's business, all labels and other devices, names or marks affixed or to be affixed thereto for purposes of selling or of identifying the same or the seller or manufacturer thereof and all of Client's right, title and interest therein and thereto: (b) documents of payment, transport and title or the equivalent thereof, including without limitation, original contracts, orders, invoices, checks, drafts, notes, documents, warehouse receipts, bills of lading, shipping receipts, dock receipts and delivery tickets and including, but not limited to, such documents made available to Client for the purpose of ultimate sale or exchange of Inventory or for the purpose of loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with Inventory in a manner preliminary to their sale or exchange: (c) all books, records, other property and general intangibles relating to the foregoing: (d) all products and proceeds of the foregoing in any form, including without limitation, insurance proceeds and any claims against third parties for loss or damage to or destruction of any or all of the foregoing: and (e) the assignment of proceeds of L/C's to FOI for an amount that is higher than the requested credit amount by at least 15%. The assigned L/C must be in a format and terms acceptable to FOI.

2.2    Client hereby recognizes and admits that until all of the Obligations have been fully and indefeasibly paid and discharged, FOI may be deemed to have absolute ownership in and unqualified right to the possession and disposal of the following: (a) all property shipped under or pursuant to or in connection with any Credit or in any way related thereto and, including, but not limited to, the documents, drafts or acceptances drawn thereunder, whether or not released to Client, (b) in and to all shipping documents, warehouse receipts, policies, or certificates of insurance and other documents accompanying or relative to documents, drafts or acceptances drawn under or relating to any Credit, and (c) all proceeds of each of the foregoing.

2.3    FOI may, at any time or times, exercise any or all of FOI's rights of ownership, including the rights of possession and sale or other disposition, with or without notice to Client, without liability to Client and entirely at Client's expense and without relieving Client from any Obligations.

## Section 3. ADDITONAL REPRESENTATIONS, WARRANTIES AND COVENANTS

Client hereby represents, warrant and covenant to FOI the following (which shall survive the execution and delivery of this Supplement), the truth and accuracy of which, or compliance with, being a continuing condition of the making of loans by FOI under the Factoring Agreement or any supplement thereto and the extension by FOI of each Credit and other financial accommodations pursuant hereto:

3.1    All sales of any Inventory shall be made by Client only in the ordinary course of business and the Accounts arising from such sales and proceeds thereof shall be and are hereby transferred and assigned to FOI and Client confirms that FOI's lien and security interest extends and attaches to those Accounts and proceeds.

Initial  Initial  Initial

3

3.2    Except as FOI may otherwise specifically consent in writing prior to the opening or issuance of any Credit, all Credit shall be opened or issued to cover the actual purchase and delivery of Inventory solely for Client's account.

3.3    All shipments made under any Credit are in accordance with the governmental laws and regulations of the countries in which the shipments originate and terminate, and are not prohibited by any such laws and regulations.

3.4    Client assumes all risk, liability and responsibility for, and agrees to pay and discharge, all present and future local, state, federal or foreign taxes, duties, or levies. Any embargo, restriction, laws, customs or regulations of any country, state, city, or other political subdivision, where the Collateral is or may be located, or wherein payments are to be made, or wherein drafts may be drawn, negotiated, accepted, or paid, shall be solely Client's risk, liability and responsibility.

3.5    All documents, instruments, notices and statements relating to any Credit and/or the Collateral, if any, shall at FOI's request, be promptly delivered to FOI.

3.6    Client shall procure promptly, or cause to be procured, any necessary licenses for the shipping of goods and comply or cause any drawer under, or beneficiary of, any Credit (or any transferee or assignee thereof), to comply with all foreign and domestic governmental laws and regulations in regard to the shipping of the Inventory, the financing thereof or payment therefor, including governmental laws and regulations pertaining to transactions involving designated foreign countries or their nationals and to furnish such certificates in that respect as FOI or any bank or other issuer or correspondent may at any time require.

3.7    The only locations of any Collateral are those addresses listed on **Schedule A** annexed hereto and made a part hereof.  Schedule A sets forth the owner and/or operator of the premises at such addresses, for all locations which Client does not own and operate and all mortgages, if any, with respect to the premises. Client shall not remove any Collateral from such locations, without FOI's prior written consent, except for sales of Inventory in the ordinary course of Client's business.

3.8    Client shall at all times maintain, with financially sound and reputable insurers, casualty and hazard insurance with respect to the Collateral for not less than its full market value and against all risks to which it may be exposed.  All such insurance policies shall be in such form, substance, amounts and coverage as may be satisfactory to FOI and shall prove for thirty (30) days minimum prior cancellation notice in writing to FOI. FOI may act as attorney for Client in obtaining, adjusting, setting, amending and canceling such insurance. Client shall promptly (a) obtain endorsements to all existing and future insurance policies with respect to the Collateral specifying that the proceeds of such insurance shall be payable to FOI as FOI's interests may appear and further specifying that FOI shall be paid regardless of any act, omission or breach of warranty by Client, (b) deliver to FOI an original executed copy of, or executed certificate of the insurance carrier with respect to, such endorsement and, at FOI's request, the original or a certified duplicate copy of the underlying insurance policy  and (c) deliver to FOI such other evidence which is satisfactory to FOI of compliance with the provisions hereof.

3.9    Client shall promptly notify FOI in writing of the details of any loss, damage, investigation, action, suit, proceeding or claim relating to the Collateral or which would result in any material adverse change in Client's business, assets, goodwill or condition, financial or otherwise.

3.10    At FOI's option, FOI may apply any insurance monies received at any time to the cost of replacement for the Inventory and/or to payment of any of the Obligations, whether or not due, in any order and in such manner as FOI, in FOI's sole discretion, may determine.

3.11    Upon FOI's request, at any time and from time to time, Client shall, at Client's sole cost and expense, execute and deliver to FOI written reports or appraisals as to the Inventory listing all locations, items and categories thereof, describing the condition of same and setting forth the lower of cost or fair market value thereof, in such form as is satisfactory to FOI.

Initial  Initial  Initial                                                    4

3.12   Client shall (a) use, store and maintain the Inventory with all reasonable care and caution and (b) use the Inventory for lawful purposes only and in conformity with applicable laws, ordinances, regulations and insurance policies.

3.13   Client assumes all responsibility and liability arising from or relating to the use, sale or other disposition of the Inventory and other Collateral.

## Section 4. INDEMNIFICATION AND RELEASE

4.1   Client shall and does hereby indemnify FOI and hold FOI harmless from and against, and agree to pay FOI on demand the amount of, any and all losses, costs, claims, demands, causes of action, liabilities or expenses (collectively, "Liabilities") which FOI may suffer or incur arising from or in connection with any transactions or occurrences relating to any Credit, the Collateral and any documents, drafts or acceptances thereunder or relating thereto, including, but not limited to, Liabilities due to any action taken by any bank or other issuer or correspondent with respect to any Credit. Client further agrees to and does hereby release and hold FOI harmless for any errors, delays or omissions, whether caused by FOI, by any bank or other issuer or correspondent or otherwise. Client's unconditional obligation to FOI hereunder shall not be modified or diminished for any reason or in any manner whatsoever. Any fees, commissions or other charges made to FOI with respect to any Credit or other Obligations by any bank or other issuer or correspondent thereof shall be conclusive and may be charged by FOI to any of Client's account(s) maintained by FOI.

4.2   The drawer under or beneficiary of any Credit (or any assignee or transferee thereof) shall be deemed Client's agent and Client assumes all risk, loss, liabilities, charges and expenses with respect to their acts or omissions.

4.3   FOI shall not be responsible for and is hereby released from any liability for: (a) the existence, character, quality, quantity, condition, packing, value or delivery of the property purporting to be represented by any documents: (b) any difference in character, quality, quantity, condition, packing, value or delivery of the property from that expressed in documents: (c) the validity, sufficiency or genuineness of any documents or drafts, or of any endorsements thereon, even if such documents, drafts or endorsements should in fact prove to be in any or all respects invalid, insufficient, altered, fraudulent or forged; (d) the time, place, manner or order in which shipment is made: (e) any or all trans-shipments, partial or incomplete shipment or failure or omission to ship any or all of the property referred to in any Credit, documents or drafts: (f) the character, adequacy, validity or genuineness of any insurance or the solvency or responsibility of any insured, or for any other risk connected with insurance: (g) any deviation from instructions, delay, default or fraud by the shipper and/or anyone else in connection with the property or the shipping thereof; (h) the solvency, responsibility or relationship to the property of any party issuing any documents in connection with such property: (i) delay in arrival or failure to arrive of either the property or any of the documents relating thereto or any delay in giving or failure to give notice of arrival or any other notice; (j) any breach of contract between the shippers or vendors and Client, or any laws, customs and regulations which may be effective in countries of negotiation and/or payment of any Credit; (k) failure of any draft or documents to bear any reference or adequate reference to any Credit or failure of documents to accompany any draft at negotiation, or failure of any person to note the amount of any document or draft on the reverse of any Credit or to surrender or take up any Credit or to forward documents other than drafts as required by the terms of any Credit; or (l) any other act or omission with respect to the Collateral or any Credit; each of which provisions, if contained in any Credit itself, maybe waived by FOI.

4.4.   If any Credit provides that payment is to be made by any bank, other issuer or correspondent, FOI shall not be responsible for the failure of any of the documents specified in any Credit to come into FOI's possession or for any delay in connection therewith, and Client's obligation to make reimbursement shall not be affected by such failure or delay in the receipt by FOI of any such documents.

4.5   Client agrees that any action taken by FOI, or any action taken by any bank or other issuer or correspondent under or in connection with any Credit, the Collateral and any documents, drafts or acceptances thereunder, shall, notwithstanding any judgement or instructions Client may or may not express to the contrary or inconsistent therewith, be conclusive and binding on Client and shall not create any resulting

Initial   Initial   Initial

5

liability to FOI. In furtherance thereof, FOI shall have the full and sole right and authority to: (a) clear and resolve any questions of noncompliance of documents; (b) give any instructions as to acceptance or rejection of any documents or goods; (c) execute any and all applications for steamship or airway guaranties, indemnities or delivery orders; (d) grant any extensions of the maturity of, time of payment for, or time of presentation of, any drafts, acceptances, or documents: and (e) agree to any amendments, renewals, extensions, modifications, changes or cancellations of any of the terms or conditions of any of the applications, Credits, or documents, drafts, or acceptances thereunder or any letters of credit included in the Collateral: all in FOI's sole name, and any bank or other issuer or correspondent shall be entitled to comply with and honor any and all such documents or instruments executed by or received solely from FOI, all without any notice to or any consent from Client.

4.6     Without FOI's express consent and endorsement in writing, Client agrees not to: (a) approve or resolve any questions of non-compliance of documents: (b) give any instructions as to acceptance or rejection of any documents or goods: (c) execute any and all applications for steamship or airway guaranties, indemnities or delivery orders: (d) grant any extensions of the maturity of, time of payment for, or time of presentation of, any drafts, acceptances or documents; or (e) agree to any amendments, renewals, extensions, modifications, changes or cancellations of any of the terms or conditions of any of the applications, Credits, or documents, drafts or acceptances thereunder.

4.7     Any rights, remedies, duties or obligations granted or undertaken by Client to any bank or other issuer or correspondent in any application for any Credit, or any outstanding Factoring Agreement relating to the opening or issuance of any Credit or acceptances or otherwise, shall be deemed to have been granted to FOI and apply in all respects to FOI and shall be in addition to any rights, remedies, duties or obligations contained herein.

4.8     Any duties or obligations undertaken by FOI to any bank or other issuer or correspondent in any application for or in connection with any Credit, including any outstanding Factoring Agreement relating to the opening or issuance of any Credit or otherwise, shall be deemed to have been undertaken by Client and apply in all respects to Client and shall be in addition to the duties or obligations contained herein.

## Section 5. ADDITIONAL REMEDIES

Upon the occurrence of any Event of Default and at any time thereafter, FOI shall have the right (in addition to any other rights FOI may have under the Factoring Agreement, this Supplement or otherwise), without notice to Client, at any time and from time to time, in FOI's discretion, with or without judicial process or the aid or assistance of others and without cost to FOI:

5.1     To enter upon any premises on or in which any of the Inventory may be located and, without resistance or interference by Client, take possession of the Inventory;

5.2     To complete processing, manufacturing, repair and shipment to customers of all or any portion of the Inventory;

5.3     To sell, foreclose or otherwise dispose of any part or all of the Inventory on or in any of Client's premises or premises of any other party;

5.4     To require Client, at Client's expense, to assemble and make available to FOI any part or all of the Inventory at any place and time designated by FOI;

5.5     To remove any or all of the Inventory from any premises on or in which the same may be located, for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose (and if any of the Inventory consists of motor vehicles, FOI may use Client's registrations and license plates).

**Representations True.** Client represents and warrants to FOI that all representations and warranties set forth in the Factoring Agreement, as amended hereby, are true and correct.

Initial  Initial  Initial                                                                                                6

**General Provisions.** This Supplement, the Factoring Agreement, any prior written amendments to the Factoring Agreement signed by FOI and Client, and the other written documents and agreements between FOI and Client set forth in full all of the representations and agreements of the parties with respect to the subject matter hereof and supersede all prior discussions, representations, agreements and understandings between the parties with respect to the subject hereof. Except as herein expressly amended, all of the terms and provisions of the Factoring Agreement, and all other documents and agreements between FOI and Client shall continue in full force and effect and the same are hereby ratified and confirmed.

WITNESS the due execution hereof by the respective duly authorized officers of the undersigned as of the Effective Date.

D.W. AMERICA, INC.

Jae Hun Jung
President

Guarantor (s)

Jae Hun Jung
Individual

Jae Chul Chung
Individual

Sep Plus, Inc. President
Jae Chul Chung, Individual

Effective Date: April 30 , 2007

Finance One, Inc.

Dong Bae Kim
Vice President

T͟J͟  ͟4͟  ͟t͟b͟
Initial  Initial  Initial

7

**Schedule A**

| Address | Type of Location | Owner/Operator's Name | Tel. No. |
|---|---|---|---|
| 226 W. 37th Street, Suite 400 New York, NY 10018 | Main Office | Jae Hun Jung | 212-714-9535 |

JJ  J  ðf
Initial  Initial  Initial

8

# CONTINUING GUARANTEE

THIS GUARANTEE is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, California  90017-5455, with respect to the Indebtedness of D.W. AMERICA, INC. (hereinafter called "D.W. AMERICA").

**1.    Continuing Guarantee.**    For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other address as FOI may direct, in lawful money of the United States, and to perform for the benefit of FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI.  As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined, monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon individually or jointly with others, and regardless of whether recovery thereon is discharged in any bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise from or in connection with FOI's acquisition of a security interest or other interest in any property of D.W. AMERICA, or in any other manner;  and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation amendments, modifications, renewals and extensions that are evidenced by any new or additional instrument, document or agreement;  and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expense of, for or incidental to collection thereof.  As used herein, the term "D.W. AMERICA" shall include any successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guarantied hereby.  Guarantor hereby acknowledges and agrees that acceptance by FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA to incur Indebtedness to D.W. AMERICA.  All sums due under this Guarantee shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

**2.    Ledger Debt.**  Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security interest, whether as a result of FOI factoring or financing accounts receivable of such third party or otherwise.  Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or financing the accounts receivable of such third parties (consisting if indebtedness and obligations now or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

Guaranty for Collection Date
Factoring Agreement            1            

$EXHIBIT\ C$

Initial

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

**3.      Waivers.**      Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor.  FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.


Initial

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to



recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

6.    **Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed nay part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

7.    **Right to Attachment Remedy.**    Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall



Initial

have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.    Subordination.**    Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.    Revocation.**    This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.    Independent Liability.**    Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

increase, decrease, or change in membership or stock ownership of Guarantor.  Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent.  If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.    Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI.  No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party.  The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same.  All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.    Financial Condition of D.W. AMERICA**    Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto.  Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter.  By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.    Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request.  Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor.  Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.    Representations and Warranties.**    Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or



Initial

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15.    Integration.**    This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16.    Amendment.**    The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17.    Costs.**    Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18.    Successors and Assigns.**    All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19.    Notices.**    Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give FOI immediate written notice of any change in his address.



**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this _____ day of April 2007.

GUARANTOR(S):

Name:       Jae Chul Chung

Address:    201 Essex Street
            Oradell, NJ 07649

Telephone:  201-367-0593

S.S.N.:     ~~[redacted]~~

Signature:  _____

## ACKNOWLEDGEMENT

STATE OF )

COUNTY OF )

On _____ June 27ᴰ 2007 _____ before me, __Alex Eshmoili_____ personally
appeared _____ Jae Chul Chung

Personally known to me or proven to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Guaranty.

_____
Notary Public

Alex A Eshmoili
Notary Public, State of New York
No. 01ES6150204
Qualified in Queens County
My Commission Expires 07/24/2010

(                      (

## CONTINUING GUARANTEE

THIS GUARANTEE is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, California 90017-5455, with respect to the Indebtedness of D.W. AMERICA, INC. (hereinafter called "D.W. AMERICA").

**1.**   **Continuing Guarantee.**    For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other address as FOI may direct, in lawful money of the United States, and to perform for the benefit of FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI. As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined, monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon individually or jointly with others, and regardless of whether recovery thereon is discharged in any bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise from or in connection with FOI's acquisition of a security interest or other interest in any property of D.W. AMERICA, or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation amendments, modifications, renewals and extensions that are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expense of, for or incidental to collection thereof. As used herein, the term "D.W. AMERICA" shall include any successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guarantied hereby. Guarantor hereby acknowledges and agrees that acceptance by FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA to incur Indebtedness to D.W. AMERICA. All sums due under this Guarantee shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

**2.**   **Ledger Debt.** Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security interest, whether as a result of FOI factoring or financing accounts receivable of such third party or otherwise. Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or financing the accounts receivable of such third parties (consisting if indebtedness and obligations now or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

Guaranty for Collection Date
Factoring Agreement             *EXHIBIT D*

                          1                               <u>JJ</u>
                                                              Initial

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

**3.    Waivers.**    Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor. FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.

(                                    (

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness.  Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness.  Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to

Guaranty for Collection Date
Factoring Agreement                    3

JJ
Initial

recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

**6.     Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed nay part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

**7.     Right to Attachment Remedy.**     Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall

have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.     Subordination.**          Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.     Revocation.**          This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.     Independent Liability.**          Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

increase, decrease, or change in membership or stock ownership of Guarantor. Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent. If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.    Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party. The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same. All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.    Financial Condition of D.W. AMERICA**    Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto. Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter. By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.    Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request. Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor. Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.    Representations and Warranties.**    Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15. Integration.** This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16. Amendment.** The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17. Costs.** Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18. Successors and Assigns.** All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19. Notices.** Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give FOI immediate written notice of any change in his address.

JJ
Initial

**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this _____ day of April 2007.

GUARANTOR(S):

| | |
|---|---|
| Name: | Jae Hun Jung |
| Address: | 409 4th Street |
| | Palisades Park, NJ 07650 |
| Telephone: | 201-363-1801 |
| S.S.N.: | ▬▬▬▬▬ |
| Signature: | |

Guaranty for Collection Date
Factoring Agreement                              8                              Initial

## ACKNOWLEDGEMENT

STATE OF                                )
                                        )
COUNTY OF                               )

On ⟨17th⟩ ⟨May⟩ of June, 2007 ___ before me, JAE H. JUNG ___ personally appeared ___
Personally known to me or proven to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Guaranty.

Notary Public ___

Chang Y. Han
Notary Public of New Jersey
My Commission Expires Oct. 21, 2007

**CONTINUING GUARANTEE**

THIS GUARANTEE is dated April 3, 2008 and is executed by the undersigned (hereinafter jointly and severally called "Guarantor") in favor of Finance One, Inc. (hereinafter called "FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, California 90017-5455, with respect to the Indebtedness of D.W. AMERICA, INC. (hereinafter called "D.W. AMERICA").

1.    **Continuing Guarantee.**    For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay on demand to FOI, at the address indicated above, or at such other address as FOI may direct, in lawful money of the United States, and to perform for the benefit of FOI, all Indebtedness of D.W. AMERICA now or hereafter owing to or held by FOI. As used herein, the term "Indebtedness" is used in its most comprehensive sense and shall mean and include without limitation: (a) any and all debts, duties, obligations, liabilities, representations, warranties and guaranties of D.W. AMERICA or any one or more of them, heretofore, now, or hereafter made, incurred, or created, whether directly to FOI or acquired by FOI by assignment or otherwise, or held by FOI on behalf of others, however arising, whether voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, certain or uncertain, determined or undetermined, monetary or non monetary, written or oral, and whether D.W. AMERICA may be liable thereon individually or jointly with others, and regardless of whether recovery thereon is discharged in any bankruptcy, insolvency or other proceeding, including without limitation any of the same that arise from or in connection with FOI's acquisition of a security interest or other interest in any property of D.W. AMERICA, or in any other manner; and (b) any and all amendments, modifications, renewals and extensions of any or all of the foregoing, including without limitation amendments, modifications, renewals and extensions that are evidenced by any new or additional instrument, document or agreement; and (c) any and all attorneys' fees, court costs, and collection charges incurred in endeavoring to collect or enforce any of the foregoing against D.W. AMERICA, Guarantor, or any other person liable thereon (whether or not suit be brought) and any other expense of, for or incidental to collection thereof. As used herein, the term "D.W. AMERICA" shall include any successor to the business and assets of D.W. AMERICA, and shall also include D.W. AMERICA in its capacity as a debtor or debtor in possession under the federal Bankruptcy Code, and any trustee, custodian or receiver for D.W. AMERICA or any of its assets, should D.W. AMERICA hereafter become the subject of any bankruptcy or insolvency proceeding, voluntary or involuntary; and all indebtedness, liabilities and obligations incurred by any such person shall be included in the Indebtedness guarantied hereby. Guarantor hereby acknowledges and agrees that acceptance by FOI of this guaranty shall not constitute a commitment of any kind by FOI to permit D.W. AMERICA to incur Indebtedness to D.W. AMERICA. All sums due under this Guarantee shall bear interest from the date due until the date paid at the highest rate charged with respect to any of the Indebtedness.

2.    **Ledger Debt.** Without limiting the generality of the provisions of Paragraph 1 above, Guarantor acknowledges and agrees that the term "Indebtedness" shall include, in addition to the matters set forth in Paragraph 1, all ledger debt of D.W. AMERICA, which shall mean and include all indebtedness of D.W. AMERICA now or hereafter owing to a third party, which FOI has heretofore or hereafter purchases from a third party or in which FOI has heretofore or hereafter acquires a security interest, whether as a result of FOI factoring or financing accounts receivable of such third party or otherwise. Guarantor acknowledges that FOI will be relying upon this guaranty in factoring or financing the accounts receivable of such third parties (consisting if indebtedness and obligations now or hereafter due from D.W. AMERICA to such third parties), as well as in permitting D.W. AMERICA to incur other Indebtedness, but nothing herein shall constitute a commitment of any kind by FOI to

Guaranty for Collection Date
Factoring Agreement                             *EXHIBIT E*

1                                              *KB*
                                              Initial

factor or finance the accounts receivable of such third parties or to permit D.W. AMERICA to incur other Indebtedness.

**3.    Waivers.**    Guarantor hereby waives: (a) presentment for payment, notice of dishonor, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Guarantor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Indebtedness; the amount of the Indebtedness from time to time outstanding; any foreclosure sale or other disposition of any property which secures any or all of the Indebtedness or which secures the obligations of any other guarantor of any or all of the Indebtedness; any adverse change in D.W. AMERICA's financial position; any other fact that might increase Guarantor's risk; any default, partial payment or non-payment of all or any part of the Indebtedness; the occurrence of any other Event of Default (as hereinafter defined); any and all agreements and arrangements between FOI and D.W. AMERICA and any changes, modifications, or extensions thereof, and any revocation, modification or release of any guaranty of any or all of the Indebtedness by any person; (b) any right to require FOI to institute suit against, or to exhaust its rights and remedies against, D.W. AMERICA or any other person, or to proceed against any property of any kind that secures all or any part of the Indebtedness, or to exercise any right of offset or other right with respect to any reserves, credits or deposit accounts held by or maintained with FOI or any indebtedness of FOI to D.W. AMERICA, or to exercise any other right or power, or pursue any other remedy FOI may have; (c) any defense arising by reason of any disability or other defense of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, with respect to all or any part of the Indebtedness, or by reason of any act or omission of FOI or others that directly or indirectly results in the discharge or release of D.W. AMERICA or any other Guarantor or any other person or any Indebtedness or any security therefor, whether by operation of law or otherwise, (d) all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of D.W. AMERICA or any collateral or security for any or all of the Indebtedness; (e) any defense arising by reason of any failure of FOI to obtain, perfect, maintain or keep in force any security interest in, or lien or encumbrance upon, any property of D.W. AMERICA or any other person, (f) any defense based upon failure of FOI to give Guarantor notice of any sale or other disposition of any property securing any or all of the Indebtedness, or any defects in any such notice that may be given, or failure of FOI to comply with any provision of applicable law in enforcing any security interest in or lien upon any property securing any or all of the Indebtedness including, but not limited to, any failure by FOI to dispose of any property securing any or all of the Indebtedness in a commercially reasonable manner; and (g) any defense based upon arising out of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against D.W. AMERICA or any other guarantor or any endorser, co-maker or other person, including without limitation any discharge of, or bar against collecting, any of the Indebtedness (including without limitation any interest thereon), in or as a result of any such proceeding. Until all of the Indebtedness has been paid, performed, and discharged in full, nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of all of the Indebtedness. In the event any payment with respect to any or all of the Indebtedness by any person is repaid or returned by FOI because of any claim that such payment constituted a preferential transfer or fraudulent conveyance or for any other reason whatsoever, the liability of Guarantor hereunder shall not be discharged or reduced by reason of such payment and Guarantor shall be and remain fully liable therefor. FOI shall have full authority in its sole discretion to compromise or settle any such claim, and any amounts received by FOI that are paid, repaid or returned as a part of such compromise or settlement shall not discharge or reduce the liability of Guarantor hereunder and Guarantor shall be and remain fully liable therefor.

Guaranty for Collection Date
Factoring Agreement                    2                                    
                                                                            Initial

**4.    Consents.**    Guarantor hereby consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, do any one or more of the following in FOI's sole and absolute discretion: (a) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Indebtedness; (b) grant any other indulgence to D.W. AMERICA or any other person in respect of any or all of the Indebtedness or any other matter; (c) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property of any kind securing any or all of the Indebtedness or any guaranty of any or all of the Indebtedness, or on which FOI at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (d) substitute or add, or take any action or omit to take any action that results in the release of, any one or more endorsers or guarantor of all or part of the Indebtedness, including without limitation one or more parties to this Guarantee, regardless of any destruction or impairment of any right of contribution or other right of Guarantor; (e) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Indebtedness, including the rate of interest thereon, (f) apply any sums received from D.W. AMERICA, any other guarantor, endorser, or cosigner, or from the disposition of any collateral or security, to any indebtedness whatsoever owing from such person or secured by such collateral or security, in such manner and order as FOI determines in its sole discretion, and regardless of whether such indebtedness is part of the Indebtedness, is secured, or is due and payable; (g) apply any sums received from Guarantor or from the disposition of any collateral or security securing the obligations of Guarantor, to any of the Indebtedness in such manner and order as FOI determines in its sole discretion, regardless of whether or not such Indebtedness is secured or is due and payable. Guarantor consents and agrees that FOI shall be under no obligation to marshal any assets in favor of Guarantor, or against or in payment of any or all of the Indebtedness. Guarantor further consents and agrees that FOI shall have no duties or responsibilities whatsoever with respect to any property securing any or all of the Indebtedness. Without limiting the generality of the foregoing, FOI shall have no obligation to monitor, verify audit, examine, or obtain or maintain any insurance with respect to, any property securing any or all of the Indebtedness.

**5.    Exercise of Rights and Remedied; Foreclosure of Trust Deeds.** Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing in any way the obligations or liability of Guarantor hereunder, FOI may, from time to time before or after revocation of this Guarantee, exercise any right or remedy it may have with respect to any or all of the Indebtedness or any property securing any or all of the Indebtedness or any guaranty therefor, including without limitation judicial foreclosure, non judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and Guarantor expressly waives any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of Guarantor's rights, including without limitation, any destruction of Guarantor's right of subrogation against D.W. AMERICA and any destruction of Guarantor's right of contribution or other right against any other guarantor of any or all of the Indebtedness or against any other person, whether by operation of Sections 580d or 726 of the California Code of Civil Procedure, or any similar or comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality if the foregoing, Guarantor understands and agrees that, in the event FOI in its sole discretion forecloses any trust deed now or hereafter securing any or all of the Indebtedness, by non judicial foreclosure, Guarantor will remain liable to FOI for any deficiency, even though Guarantor will lose his right of subrogation against D.W. AMERICA, and even though Guarantor will be unable to



Initial

recover from D.W. AMERICA the amount of the deficiency for which Guarantor is liable, and even though Guarantor would have retained his right of subrogation against D.W. AMERICA if FOI had foreclosed said trust deed by judicial foreclosure as opposed to non judicial foreclosure.

**6.     Acceleration.** Notwithstanding the terms of all or any part of the Indebtedness, the obligations of the Guarantor hereunder to pay and perform all of the Indebtedness shall, at the option of FOI, immediately become due and payable, without notice, and without regard to the expressed maturity of any of the Indebtedness, in the event: (a) any warranty, representation, statement, report, or certificate made or delivered to FOI by D.W. AMERICA or Guarantor, or any of their respective officers, partners, employees, or agents, is incorrect, false, untrue, or misleading when given in any material respect; or (b) D.W. AMERICA or Guarantor shall fail to pay or perform when due all or any part of the Indebtedness; or (c) Guarantor shall fail to pay or perform when due any indebtedness or obligation of Guarantor to FOI, whether under this Guarantee or any other instrument, document, or agreement heretofore or hereafter entered into; or (d) any event shall occur which results in the acceleration of the maturity of any indebtedness of D.W. AMERICA or Guarantor to others; or (e) D.W. AMERICA or Guarantor shall fail promptly to perform or comply with any term or condition of any agreement with any third party which does or may result in a material adverse effect on the business of D.W. AMERICA or Guarantor; or (f) there shall be made or exist any levy, assessment, attachment, seizure, lien, or encumbrance for any cause or reason whatsoever upon all or any part of the property of D.W. AMERICA or Guarantor (unless discharged by payment, release or bond not more than twenty (20) days after such event has occurred); or (g) there shall occur the liquidation, dissolution, termination of existence, insolvency, or business failure of D.W. AMERICA or Guarantor, or the appointment of a receiver, trustee or custodian for D.W. AMERICA, Guarantor or all or any part of the property of either of them, or the assignment for the benefit of creditors by D.W. AMERICA or Guarantor, or the commencement of any proceeding by or against D.W. AMERICA or Guarantor under any reorganization, insolvency, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, now or hereafter in effect; or (h) D.W. AMERICA or Guarantor shall be deceased or declared incompetent by any court or a guardian or conserver shall be appointed for either of them or for the property of either of them; or (i) D.W. AMERICA or Guarantor shall conceal, remove or permit to be concealed or removed any part of its property, with intent to hinder, delay or defraud its creditors, or make or suffer any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall make any transfer of its property to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (j) Guarantor shall revoke this Guarantee. All of the foregoing is hereinafter referred to as "Events of Default".

**7.     Right to Attachment Remedy.** Guarantor agrees that, notwithstanding the existence of any property securing any or all of the Indebtedness, FOI shall have all of the rights of an unsecured creditor of Guarantor, including without limitation the right to obtain a temporary protective order and writ of attachment against Guarantor with respect to any sums due under this Guarantee. Guarantor further agrees that in the event any property secures the obligations of Guarantor under this Guarantee, to the extent that FOI, in its sole and absolute discretion, determines prior to the disposition of such property that the amount to be realized by FOI therefrom may be less than the indebtedness of Guarantor under this Guarantee, FOI shall have all the rights of an unsecured creditor against Guarantor, including without limitation the right of FOI, prior to the disposition of said property, to obtain a temporary protective order and writ of attachment against Guarantor. Guarantor waives the benefit of Section 483.010(b) of the California Code of Civil procedure and of any and all other statutes and rules of law now or hereafter in effect requiring FOI to first resort to or exhaust all such collateral before seeking or obtaining any attachment remedy against Guarantor. FOI shall

Guaranty for Collection Date
Factoring Agreement                                    4                                    

have no liability to Guarantor as a result thereof, whether or not the actual deficiency realized by FOI is less than the anticipated deficiency on the basis which FOI obtains a temporary protective order or writ of attachment.

**8.    Subordination.**          Any and all rights of Guarantor under any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for and guaranties of any such obligations, whether now existing or hereafter arising, are hereby subordinated in right of payment to the prior payment in full of all of the Indebtedness. No payment in respect of any such subordinated obligations shall at any time be made to or accepted by Guarantor if at any time such payment any Indebtedness is outstanding. If any Event of Default has occurred, D.W. AMERICA and any assignee, trustee in bankruptcy, receiver, or any other person having custody or control over any or all of D.W. AMERICA's property are hereby authorized and directed to pay to FOI the entire balance of the Indebtedness before making any payments whatsoever to Guarantor, whether as a creditor, shareholder, or otherwise; and insofar as may be necessary for that purpose, Guarantor hereby assigns and transfers to FOI all rights to any and all debts, liabilities and obligations owing from D.W. AMERICA to Guarantor, including any security for any guaranties of any such obligations, whether now existing or hereafter arising, including without limitation any payments, dividends or distributions out of the business or assets of D.W. AMERICA. Any amounts received by Guarantor in violation of the foregoing provisions shall be received and held in trust for the benefit of FOI and shall forthwith be paid over to FOI to be applied to the Indebtedness in such order and sequence as FOI shall in its sole discretion determine. Guarantor hereby expressly waives any right to set-off or assert against FOI any counterclaim that Guarantor may have against D.W. AMERICA.

**9.    Revocation.**          This is a continuing guaranty relating to all of the Indebtedness, including Indebtedness arising under successive transactions that from time to time continue the Indebtedness or renew it after it has been satisfied. The obligations of Guarantor hereunder may be terminated only as to future transactions and only by giving written notice thereof to FOI at its address above by registered first-class U.S. mail, postage prepaid, return receipt requested. No such revocation shall be effective until the third business day following the date of actual receipt thereof by FOI. Notwithstanding such revocation, this Guarantee and all consents, waivers and other provision hereof shall continue in full force and effect as to any and all Indebtedness that is outstanding on the effective date of revocation and all extensions, renewals and modifications of said Indebtedness including without limitation amendments, extensions, renewals and modifications that are evidenced by new or additional instruments, documents or agreements executed after revocation.

**10.    Independent Liability.**          Guarantor hereby agrees that one or more successive or concurrent actions may be brought hereon against Guarantor, in the same action in which D.W. AMERICA may be sued or in separate actions, as often as deemed advisable by FOI. The liability of Guarantor hereunder is exclusive and independent of any other guaranty of any or all of the Indebtedness whether executed by Guarantor or by any other guarantor. The liability of Guarantor hereunder shall not be affected, revoked, impaired, or reduced by any one or more of the following: (a) the fact that the Indebtedness exceeds the maximum amount of Guarantor's liability, if any, specified herein or elsewhere (and no agreement specifying a maximum amount of Guarantor's liability shall be enforceable unless set forth in a writing signed by FOI or set forth in this Guarantee); or (b) any direction as to the application of payment by D.W. AMERICA or by any other party; or (c) any other continuing or restrictive guaranty or undertaking or any limitation on the liability of any other guarantor (whether under this Guarantee or under any other agreement); or (d) any payment on or reduction of any such other guaranty or undertaking; or (e) any revocation, amendment, modification or release of any such other guaranty or undertaking; or (f) any dissolution or termination of, or

Guaranty for Collection Date
Factoring Agreement                    5



Initial

increase, decrease, or change in membership or stock ownership of Guarantor.  Guarantor hereby expressly represents that he was not induced to give this Guarantee by the fact that there are or may be other guarantors either under this Guarantee or otherwise, and Guarantor agrees that any release of any one or more of such other guarantors shall not release Guarantor from his obligations hereunder either in full or to any lesser extent.  If Guarantor is a married person, Guarantor hereby expressly agrees that recourse may be had against his or her separate property for all of his or her obligations hereunder.

**11.     Remedies Cumulative; No Waiver.** FOI shall have the right to seek recourse against Guarantor to the full extent provided for herein or in any other instrument or agreement evidencing obligations of Guarantor to FOI.  No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of FOI's right to proceed in any other form of action or proceeding or against any other party.  The failure of FOI to enforce any of the provisions of this Guarantee at any time or for any period of time shall not be construed to be a waiver of any such provision or the right thereafter to enforce the same.  All remedies hereunder shall be cumulative and shall be in addition to all rights, powers and remedies given to FOI by law or under other instrument or agreement.

**12.     Financial Condition of D.W. AMERICA**     Guarantor is fully aware of the financial condition of D.W. AMERICA and is executing and delivering this Guarantee at D.W. AMERICA's request and based solely upon his own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of FOI with respect thereto.  Guarantor represents and warrants that he is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning D.W. AMERICA's financial condition and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting FOI to furnish to him any information now or hereafter in FOI's possession concerning the same or any other matter.  By executing this Guarantee, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that D.W. AMERICA will incur additional Indebtedness for which Guarantor will be liable hereunder after D.W. AMERICA financial condition or ability to pay such Indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against D.W. AMERICA.

**13.     Reports and Financial Statements of Guarantor.** Guarantor shall, at his sole cost and expense, at any time and from time to time, prepare or cause to be prepared, and provide to FOI upon FOI's request: (a) such financial statements and reports concerning Guarantor for such periods of time as FOI may designate (which financial statements shall, if requested by FOI, be audited by certified public accountants acceptable to FOI); (b) any other information concerning Guarantor's business, financial condition or affairs as FOI may request; and (c) copies of any and all foreign, federal, state and local tax returns and reports of or relating to Guarantor as FOI may from time to time request.  Guarantor hereby intentionally and knowingly waives any and all rights and privileges Guarantor may have not to divulge or deliver said tax returns, reports and other information that are requested by FOI hereunder or in any litigation in which FOI may be involved relating directly or indirectly to D.W. AMERICA or to Guarantor.  Guarantor further agrees immediately to give written notice to FOI of any adverse change in Guarantor's financial condition and of any condition or event that constitutes an Event of Default under this Guarantee.

**14.     Representations and Warranties.**     Guarantor hereby represents and warrants that: (a) it is in Guarantor's direct interest to assist D.W. AMERICA in procuring credit, because D.W. AMERICA is an affiliate of Guarantor, furnishes goods or services to Guarantor, purchases or

acquires goods or services from Guarantor, and/or otherwise has a direct or indirect corporate or business relationship with Guarantor; (b) this Guarantee has been duly and validly authorized, executed and delivered and constitutes the binding obligation of Guarantor, enforceable in accordance with its terms; and (c) the execution and delivery of this Guarantee does not violate or constitute a default under any order, judgment, decree, instrument or agreement to which Guarantor is a party or by which he or his property are affected or bound.

**15. Integration.** This Guarantee is the entire and only agreement between Guarantor and FOI with respect to the guaranty of the Indebtedness of D.W. AMERICA by Guarantor, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made, which are not set forth herein, are superseded hereby.

**16. Amendment.** The terms and provisions hereof may not be waived, altered, modified, or amended except in a writing executed by Guarantor and a duly authorized officer of FOI.

**17. Costs.** Whether or not suit be instituted, Guarantor agrees to reimburse FOI on demand for all attorneys' fees and all other costs and expenses incurred by FOI in enforcing this Guarantee, or arising out of or relating in any way to this Guarantee, or in enforcing any of the Indebtedness against D.W. AMERICA, Guarantor, or any other person, or in connection with any property of any kind securing all or any part of the Indebtedness. Without limiting the generality of the foregoing, and in addition thereto, Guarantor shall reimburse FOI on demand for all attorneys' fees and costs FOI incurs in any way relating to Guarantor, D.W. AMERICA or the Indebtedness, in order to: obtain legal advice; enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file, prosecute or defend any claim or cause of action in any action or proceeding (including without limitation any probate claim, bankruptcy claim, third-party claim, secured creditor claim, reclamation complaint, and complaint for relief from any stay under the Bankruptcy Code or otherwise); protect, obtain possession of, sell, lease, dispose of or otherwise enforce any security interest in or lien on any property of any kind securing any or all of the Indebtedness; or represent FOI in any litigation with respect to D.W. AMERICA or Guarantor's affairs. In the event either FOI or Guarantor files any lawsuit against the other predicated on a breach of this Guarantee, the prevailing party in such action shall be entitled to recover its attorneys' fees and costs of suit from the non-prevailing party.

**18. Successors and Assigns.** All rights, benefits and privileges hereunder shall inure to the benefit of and be enforceable by FOI and its successors and assigns and shall be binding upon Guarantor and his heirs, executors, administrators, personal representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to FOI shall terminate this Guarantee as to his estate, and notwithstanding the death of Guarantor or notice thereof to FOI, this Guarantee shall continue in full force and effect with respect to all Indebtedness, including without limitation, indebtedness incurred or created after the death of Guarantor and notice thereof to FOI.

**19. Notices.** Any notice that a party shall be required or shall desire to give to the other hereunder (except for notice of revocation, which shall be governed by Paragraph 8 of this Guarantee) shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to FOI at its addresses set forth in the heading of this Guarantee and to Guarantor at his address set forth next to his signature hereon, and such notices shall be deemed duly given on the date of personal delivery or three days after the date of mailing as aforesaid. FOI and Guarantor may change their address for purposes of receiving notices hereunder by giving written notice thereof to the other party in accordance herewith. Guarantor shall give FOI immediate written notice of any change in his address.

Guaranty for Collection Date
Factoring Agreement                                    7                                    
                                                                                            Initial

**20.    Construction; Severability.** If more than one person has executed this Guarantee, the term "Guarantor" as used herein shall be deemed to refer to all and any one or more of such persons and their obligations hereunder shall be joint and several. Without limiting the generality of the foregoing, if more than one person has executed this Guarantee, this Guarantee shall in all respects be interpreted as though each person signing this Guarantee had signed a separate Guarantee, and reference herein to "other guarantors" or words of similar effect shall include without limitation other persons signing this Guarantee. As used in this Guarantee, the term "property" is used in its most comprehensive sense and shall mean all property of every kind and nature whatsoever, including without limitation real property, personal property, mixed property, tangible property and intangible property. Words used herein in the masculine gender shall include the neuter and feminine gender, words used herein in the neuter gender shall include the masculine and feminine gender, words used herein in the singular shall include the plural and words used in the plural shall include the singular, wherever the context so reasonably requires. If any provisions of this Guarantee or the application thereof to any party or circumstance is held invalid, void, inoperative or unenforceable, the remainder of this Guarantee and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guarantee being severable in any such instance.

**21.    Governing Law and Jurisdiction.** This instrument and all acts and transactions pursuant or relating hereto and all rights and obligations of the parties hereto be governed, construed, and interpreted in accordance with the internal laws of the State of California. In order to induce FOI to accept this Guarantee, and as a material part of the consideration therefor: (i) Guarantor agrees that all actions or proceedings relating directly or indirectly hereto shall, at the option of FOI, be litigated in courts located within Los Angeles County, California; (ii) Guarantor consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (iii) Guarantor waives any and all rights Guarantor may have to transfer or change venue of any such action or proceeding.

**22.    Waiver of Jury Trial.** GUARANTOR INTENTIONALLY AND KNOWINGLY, FOLLOWING CONSULTATION WITH LEGAL COUNSEL, WAIVES HIS RIGHT TO TRIAL BY JURY IN ANY CLAIM, CAUSE OF ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FOI TO ENTER INTO A BUSINESS RELATIONSHIP WITH D.W. AMERICA AND THAT FOI HAS RELIED AND WILL CONTINUE TO RELY ON THIS WAIVER.

IN WITNESS WHEREOF, the undersigned has executed this Guarantee on this ___4___ day of April 2008.

GUARANTOR(S):

Name:          Kwang B. Park

Address:       3 Scarlet Oak Lane
               Paramus, NJ 07652

Telephone:     2/2 - 714- 9535

S.S.N.:        ▄▄▄▄▄▄▄

Signature:     _____

Guaranty for Collection Date
Factoring Agreement                    8                        KB
                                                             Initial

## ACKNOWLEDGEMENT

STATE OF *NY*

COUNTY OF *NY*

On _4th Cfand_ before me, _NEVILLE WARREN_ a Notary Public, personally
appeared _KWANG B PARK_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____ (Seal)

Signature

NEVILLE W WARREN
Notary Public - State of New York
NO. 01WA6133981
Qualified in Queens County
My Commission Expires 09

 **FinanceOne**          Client Statement                    05/01/2008 To 05/31/2008

As part of the condition in using these online services, you agree that we shall have no liability or responsibility for any errors in any of the information provided in the Online Report System, or for any interruption or malfunction of the System for any reason whatsoever.

CLIENT:   D.W. AMERICA, INC.                                        CLIENT ID:    43046

| Date | A/R Assigned | Payment Rcvd | CM/DM/ Chargeback | Non-Fac Payments | Reserve Charges | Fee/Int Charges | Disbmnt | Outstanding A/R | Loan Balance | Net A/R Bal |
|------|------|------|------|------|------|------|------|------|------|------|
| 04/30/08 | | | | | | | | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/01/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/02/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 288,773.27 | 299,058.74 |
| 05/05/08 | 0 | 0 | 0 | 0 | 0 | 3,527.64 | 0 | 587,832.01 | 292,300.91 | 295,531.10 |
| 05/06/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,832.01 | 292,300.91 | 295,531.10 |
| 05/07/08 | 0 | 0 | 14,768.65 | 0 | 0 | 0 | 0 | 573,063.36 | 292,300.91 | 280,762.45 |
| 05/08/08 | 0 | 0 | 0 | 0 | 0 | 45.18 | 0 | 573,063.36 | 292,346.09 | 280,717.27 |
| 05/09/08 | 0 | 0 | 0 | 0 | 0 | 648.46 | 0 | 573,063.36 | 292,994.55 | 280,068.81 |
| 05/12/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 573,063.36 | 292,994.55 | 280,068.81 |
| 05/13/08 | 0 | 54,857.02 | 10,823.73 | 0 | 0 | 0 | 0 | 507,382.61 | 238,137.53 | 269,245.08 |
| 05/14/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 507,382.61 | 238,137.53 | 269,245.08 |
| 05/15/08 | 0 | 17,416.40 | 0 | 0 | 1,000.00 | 1,035.81 | 10,000.00 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/16/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/19/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/20/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 232,756.94 | 257,209.27 |
| 05/21/08 | 0 | 0 | 0 | 0 | 1.64 | 0 | 0 | 489,966.21 | 232,758.58 | 257,207.63 |
| 05/22/08 | 0 | 0 | 0 | 0 | 0 | 368.06 | 0 | 489,966.21 | 233,126.64 | 256,839.57 |
| 05/23/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 233,126.64 | 256,839.57 |
| 05/27/08 | 0 | 0 | 0 | 0 | 0 | 3,054.36 | 0 | 489,966.21 | 236,181.00 | 253,785.21 |
| 05/28/08 | 0 | 0 | 0 | 0 | 0 | 3,125.27 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/29/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/30/08 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 489,966.21 | 239,306.27 | 250,659.94 |
| 05/31/08 | 0 | 0 | 0 | 0 | 0 | 1,710.98 | 0 | 489,966.21 | 241,017.25 | 248,948.96 |
| **TOTAL** | **0.00** | **72,273.42** | **25,592.38** | **0.00** | **1,001.64** | **13,515.76** | **10,000.00** | | | |

Dilution for this period = 26.15 %

EXHIBIT F

 **FinanceOne**    PO Financing Statement    05/01/2008 To 05/31/2008

As part of the condition in using these online services, you agree that we shall have no liability or responsibility for any errors in any of the information provided in the Online Report System, or for any interruption or malfunction of the System for any reason whatsoever.

CLIENT: D.W. AMERICA, INC.    CLIENT ID: 43046

| Date | Fund Amount | Charge | Comm | Accrued Comm | Paid | PO Balance | OutStanding Bal |
|---|---|---|---|---|---|---|---|
| 04/30/08 | | | PREVIOUS LOAN BALANCE | | | 795,082.74 | 795,082.74 |
| 05/01/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/02/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/03/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/04/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/05/08 | 0.00 | 0.00 | 3,527.64 | | 3,527.64 | 795,082.74 | 795,082.74 |
| 05/06/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/07/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/08/08 | 0.00 | 0.00 | 45.18 | | 45.18 | 795,082.74 | 795,082.74 |
| 05/09/08 | 0.00 | 0.00 | 648.46 | | 648.46 | 795,082.74 | 795,082.74 |
| 05/10/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/11/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/12/06 | | | | | | 795,082.74 | 795,082.74 |
| 05/13/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/14/08 | | | | | | 795,082.74 | 795,082.74 |
| 05/15/08 | 0.00 | 0.00 | 1,035.81 | | 11,035.81 | 785,082.74 | 785,082.74 |
| 05/16/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/17/06 | | | | | | 785,082.74 | 785,082.74 |
| 05/18/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/19/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/20/08 | 0.00 | 0.00 | 0.00 | | 0.00 | 785,082.74 | 785,082.74 |
| 05/21/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/22/08 | 0.00 | 0.00 | 368.06 | | 368.06 | 785,082.74 | 785,082.74 |
| 05/23/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/24/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/25/06 | | | | | | 785,082.74 | 785,082.74 |
| 05/26/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/27/08 | 0.00 | 0.00 | 3,054.36 | | 3,054.36 | 785,082.74 | 785,082.74 |
| 05/28/06 | 0.00 | 0.00 | 3,125.27 | | 3,125.27 | 785,082.74 | 785,082.74 |
| 05/29/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/30/08 | | | | | | 785,082.74 | 785,082.74 |
| 05/31/08 | | | | | | 785,082.74 | 785,082.74 |
| **TOTAL:** | **0.00** | **0.00** | **11,804.78** | **0.00** | **21,804.78** | | |

# COLLECTION DATE FACTORING AGREEMENT

This Collection Date Factoring Agreement (this "Agreement"), dated and effective as of the Effective Date, is entered into between Finance One, Inc. ("FOI"), with offices at 888 S. Figueroa Street, Suite 1100, Los Angeles, CA 90017-5455, Telecopy No.: (213) 430-4877, and D.W. AMERICA, INC. ("Client"), whose address is 226 W. 37th Street, Suite 400, New York, NY 10018. Telecopy No.: (212) 714-9740 and will constitute the terms upon which FOI will act as the sole factor of Client. Capitalized terms used herein will have the meanings assigned to such terms in Section 12 of this Agreement.

## SECTION 1.    Sale and Approval of Accounts

1.1    Client hereby agrees to sell, assign and transfer to FOI, and FOI hereby agrees to purchase, all of Client's Accounts, with full power to FOI to collect and otherwise deal with such Accounts as the sole and exclusive owner thereof. FOI will purchase as Account on the shortest selling terms for the Purchase Price thereof upon receipt by FOI of the invoice copy evidencing such Account.

1.2    (a)    Client will submit for FOI's credit approval the credit requirements of Client's customers, a description of Client's normal selling terms and such other Information as FOI requests concerning Client's customers. FOI may, in FOI's sole credit judgment, establish credit lines for sales to Client's customers on Client's normal selling terms or on other selling terms approved by FOI by Written Notice. Client may also submit for FOI's credit approval specific orders from Client's customers and FOI may, in FOI's sole credit judgment, approve such orders on a single order credit approval basis. All of FOI's credit approvals will be by Written Notice to Client. All sales to a customer within the credit line established for such customer on Client's normal selling terms or within the single order credit approvals given by FOI for orders from such customer will be Approved Accounts provided that Delivery is completed while the credit line or single order credit approval remains in effect.

    (b)    FOI may amend or withdraw a credit line or single order credit approval at any time prior to Delivery by notifying Client verbally and/or by Written Notice. A single order credit approval will be automatically withdrawn: (i) in the event Delivery is not made on or prior to the expiration date indicated on the single order credit confirmation form FOI sends to Client by Written Notice; or (ii) in the event any change is made in any of the terms of the Account without FOI's prior approval by Written Notice.

    (c)    FOI will have no liability to Client or to any customer for FOI's refusal to credit approve an Account or FOI's withdrawal or amendment of a credit approval. Client must assign accounts to FOI before the payment due date and within the seventh business day from the actual shipment date. Otherwise, FOI's credit approval will be invalid.

1.3    FOI will assume the Credit Risk on all Approved Accounts. FOI will have full recourse to Client for all Non-Approved Accounts.

1.4    In the event that monies are at any time owing by a customer for both Approved Accounts and Non-Approved Accounts, any amount when paid by or credited to the customer will be applied as follows:

    (a)    If FOI issued single order approvals, all amounts paid by or credited to the customer will be deemed applied first to Approved Accounts.

    (b)    If FOI established a credit line for such customer and if the credit line was in force at the time amounts were received from or credited to the customer, such amounts will be deemed applied first to Non-Approved Accounts. If the credit line is canceled, any amount thereafter received or credited will be deemed applied first to Approved Accounts.

1.5    If a bankruptcy or insolvency proceeding is instituted by or against a customer and if FOI agrees by Written Notice to Client to make a claim in such proceeding for Non-Approved Accounts, all amounts

EXHIBIT A

Initial

distributed to FOI in such proceeding will be shared pro rata between Approved Accounts and Non-Approved Accounts.

## SECTION 2.    Advance, Payments, Commissions, Fees and Ledger Debt

2.1     FOI will purchase each Account on the longest or shortest selling terms, at FOI's option, and will pay Client as the purchase price the net amount thereof calculated by deducting from the gross amount of each Account the discount, if any, FOI's factoring commission and all credits, including, without limitation, merchandise returns, allowances, and chargebacks and all other charges provided for hereunder. The purchase price less advances, fee and any other amounts due to FOI will be credited to Client's account on the Collection Date.

2.2     Subject to the terms and conditions of the Agreement, FOI may, upon Client's request, and in FOI's sole discretion, make advances to Client or for Client's account against the Purchase Price of Accounts in amounts, in FOI's sole discretion, of up to the following percentages of the Purchase Price of such Accounts:  (a) if the Account is an Approved Account, FOI may advance to Client up to eighty percent (80%) of the Purchase Price of such Approved Account; (b) if the Account is a Non-Approved Account, FOI may advance to Client up to fifty percent (50%) of the Purchase Price of such Non-Approved Account; (c) if the Account is a Takeover Account, FOI may advance to Client up to N/A percent (N/A%) of the Purchase Price of such Takeover Account, provided, however, that (i) if a Takeover Account is more than 45 days past due, FOI will not make any advances on any such Takeover Account and (ii) if N/A or more of a single customer's outstanding Takeover Accounts are forty-five (45) days or more days past due, FOI will not make any advances on any Takeover Accounts of such customer. Furthermore, if an invoice for a Non-Approved Account is delinquent over 45 days from the due date, the invoice will not be eligible for advance by FOI.

2.3     If at any time the aggregate Net Amount of Accounts arising from sales to a single customer exceeds an amount equal to fifty percent (50%) of the total accounts receivable outstanding at such time, FOI will not make any advances on any such Accounts in excess of said amount.  Furthermore, FOI does not intend to make any advances on any Accounts to the extent that any such advance would cause the aggregate amount of outstanding Obligations to exceed $ 1,500,000.00.

2.4     At the time FOI purchases an Account, FOI will charge Client's account with a factoring commission of one percent (1.00%) of the Net Amount of the Account. On Accounts bearing payment terms in excess of sixty (60) days, the factoring commission will be increased by one quarter of one percent (0.25%) for each thirty (30) days or part thereof that the stated terms exceed sixty (60) days. Furthermore, FOI will consider the payment terms of Net 10 EOM (End of Month) as 45 days. The commission on any invoice evidencing a Receivable purchased hereunder shall not be less than $10.00 under any circumstances ("Minimum Invoice Charge").  In addition, FOI will charge one time charge of N/A percent (N/A%) for the Takeover Account. Furthermore, for all accounts defined by FOI in its sole discretion as international account (the "International Account"), there shall be additional factoring commission up to one percent (1.00%) as the International Account surcharge.

2.5     During each Contract Year (the twelve months immediately following the date hereof or any anniversary thereof), Client agrees to pay FOI factoring commissions aggregating at least $50,000.00 (Minimum Annual Commission).  If at the end of any Contract Year, the aggregate of factoring commissions paid by Client is less than the Minimum Annual Commission, then Client shall pay to FOI, or FOI may charge Client's account with, an amount equal to the difference between the Minimum Annual Commission and the factoring commissions actually paid during that Contract Year. **(Initial  JJ  )** If Client terminates this Agreement at any time during a Contract Year or if FOI terminates this Agreement at any time during a contract year upon the occurrence of an Event of Default, Client shall nevertheless remain obligated to pay the Minimum Annual Commission for such Contract Year.

2.6     FOI will charge Client's account FOI's standard wire transfer fee on all wire transfers, charges for returned items and all other bank charges.  Client agrees to bear the cost of all filing fees, filing taxes, search reports, legal fees and other charges incurred by FOI in the perfection, protection, preservation

and enforcement of FOI's rights in any collateral in which Client has granted FOI a security interest. In addition to the fees and charges under this Agreement, Client agrees to pay FOI, as of the date hereof, a facility fee in the amount of $500.00 for the initial set-up and implementation of Client's account with FOI. Client also agrees to promptly pay all fees, costs and expenses (including, without limitation, attorneys fees and allocated costs of internal counsel) incurred by FOI in connection with the creation, or administration of this Agreement or any related instructions, documents or agreements, including the negotiation and documentation of any waivers, forbearances, amendments or other modifications relating to this Agreement or any such related agreements. All fees, costs and expenses will be part of the Obligations, will be payable on demand and will be secured by any collateral in which Client has granted FOI a security interest. FOI may also, at FOI's option, charge Client's account for all amounts owing by Client to FOI under this Agreement and for all other Obligations.

2.7     FOI may, in its sole discretion, approve credits for Client, in amount determined from time to time by FOI, to enable Client to purchase goods or services from other factoring clients of FOI (the indebtedness owing by Client for such purchases is hereafter referred to as "Ledger Debt"). There would be no charge for such credit approval to the extent that Client did not pay ledger debt when due. FOI would have the right to pay such amounts and to charge such payments to Client's account.

**SECTION 3.     Interest and Collection Clearance Charge.**

3.1     Client will pay FOI interest on the Daily Balance. Interest will be calculated daily at a rate per annum equal to one and one half of one percent (1.50%) plus the Base Rate (the "Interest Rate") and will be charged to Client's account on Collection Date. The Interest Rate will also be charged to Client on all other obligations, except those specifying a different rate, from the date incurred through the date paid. Notwithstanding the foregoing, the Interest Rate shall never be greater than the highest rate permitted by law. Any publicly announced decrease or increase in the Base Rate will result in an adjustment to the Interest Rate on the next business day. Notwithstanding the foregoing, Client understands and agrees that the Base Rate shall never be less than six percent (6.00%) per annum. After the occurrence of an Event of Default and for so long as such Event of Default continues, all the Obligations will, at FOI's option, bear interest at a rate per annum equal to five percent (5.00%) plus the Interest Rate. Interest will be calculated on the basis of a 360-day year for the actual number of days elapsed. In no event shall the rate charged hereunder exceed the highest rate permitted under applicable law. In the event, however, that FOI receives interest hereunder in excess of the highest rate permissible, Client agrees that Client's sole remedy shall be to seek repayment of such excess, and Client hereby waives any and all other rights and remedies which may be available to Client under law or in equity.

3.2     If an Account or any payment is charged back to Client after the Collection Date or Approved Payment Date, as applicable, Client will pay FOI interest at the Interest Rate on the Net Amount of such Account or on such payment from such date to the charge back date.

3.3     To allow for collection clearance on all checks and other payments remitted by Client's customers, Client will, in addition to interest, pay FOI a collection clearance charge computed as follows: (a) total cash collections for the month, multiplied by (b) 4 business days, multiplied by (c) the Interest Rate, divided by (d) 360 days.

**SECTION 4.     Representations, Warranties and Covenants**

4.1     Client represents, warrants and covenants as to each Account that, at the time of its creation, the Account is a valid, bona fide account, representing an undisputed indebtedness incurred by the named customer for goods actually sold and delivered; there are no setoffs, offsets or counterclaims, genuine or otherwise, against the Account; the Account does not represent sales to consumers of goods to be used for personal, family or household purposes; all amounts are due in United States Dollars; the Account does not represent a sale to any of Client's subsidiaries, affiliates, directors, officers, agents, stockholders, or employees, or a consignment, guarantied sale, or bill and hold transaction, or a cash on delivery sale; no agreement exists permitting any deduction or discount (other than the discount stated on the invoice); Client is the lawful owner of the Account and has the right to sell and assign the same to FOI; the Account

JJ
Initial

is free of all security interests, liens and encumbrances (including tax liens) other than those in favor of FOI, and the Account is due and payable in accordance with its terms.

4.2    Client will not grant or suffer to exist in favor of any party other than FOI any lien upon or security interest in Client's inventory.

4.3    Client represents and warrant that Client's legal name is exactly as set forth on the signature page of this Agreement. Client is a solvent corporation; duly incorporated and in good standing under the laws of the State of New York and qualified in all States where such qualification is required; the execution, delivery and performance of this Agreement have been duly authorized and are not in contravention of any applicable law, Client's corporate charter or by-laws or any agreement or order by which Client is bound; Client is not, to the best of Client's knowledge, in violation of any law, ordinance, rule, regulation, order or other requirement of any government or any instrumentality or agency thereof.

4.4    Client will not change Client's corporate name or the location of Client's office or open any new offices without giving FOI at least thirty (30) days prior Written Notice. At the present time, Client carries on business at the following address(s):

226 W. 37th Street, Suite 400, New York, NY 10018

4.5    All books and records pertaining to the Accounts or to any inventory owned by Client will be maintained solely and exclusively at the above address or the addresses listed in Section 4.4 hereof and no such books and records will be moved or transferred without giving FOI thirty (30) days prior Written Notice.

4.6    After FOI's request, Client will hold all returned, replevined or reclaimed goods relating to Accounts coming into Client's possession in trust for FOI and all such goods will be segregated and identified as held in trust for FOI's benefit and Client will, at FOI's request, and at Client's expense, deliver such goods to such place or places as FOI may designate.

4.7    The trade names or styles set forth below are the only trade names or styles under which Client transacts business or has transacted business during the last five (5) years; Accounts sold to FOI hereunder and represented by invoices bearing such trade names or styles are wholly owned by Client; the undertakings, representations and warranties made in connection therewith will be identical to and of the same force and effect as those made with respect to invoices bearing Client's corporate name; Client's use of any trade names or styles is in compliance with all laws regarding the use of such trade names or styles. Client will give FOI thirty (30) days prior Written Notice of the change of any trade name or style or Client's use of any new trade name or style.

Trade name or styles: N/A

Client hereby assigns, transfers, and conveys to FOI, effective upon the occurrence of any Event of Default hereunder, the non-exclusive right and license to use all trade names and trade styles owned or used by Client together with any goodwill associated therewith, all to the extent necessary to enable FOI to realize on any assets of Client in which Client has granted FOI a security interest. Such right and license is granted free of charge without requirement that any monetary payment whatsoever is made to Client or third party by FOI.

4.8    Discounts, credits and allowances on Accounts may be issued, granted or allowed by Client to customers and returns may be accepted by Client until FOI notifies Client to the contrary by Written Notice. Such discounts, credits or allowances once issued may be claimed only by the customer. Client will issue and assign to FOI all full credit memos relating to credits on Accounts and any other credit memos FOI requests relating to credits on Accounts immediately upon FOI's request but in no event more than two (2) weeks from the date on which such credits are granted to the customers.

Collection Date Factoring Agreement          4

JJ
Initial

4.9     To the best of Client's knowledge, there are no judgments outstanding against or affecting Client, its officers, directors or affiliates or any of Client's property and there are no actions, charges, claims, demands, suits, proceedings, or governmental investigations now pending or threatened against Client or any of Client's property.

4.10    Client agrees that no provision in this Agreement and no course of dealing between the parties shall be deemed to create any fiduciary duty by FOI to Client. Client agrees that neither FOI nor any of FOI's affiliates, officers, directors, shareholders, employees, attorneys, or agents shall have any liability with respect to, and Client hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by Client in connection with, arising out of, or in any way related to this Agreement or any of the transactions contemplated by this Agreement. Client hereby waives, releases, and agrees not to sue FOI or any of FOI's affiliates, officers, directors, shareholders, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to this Agreement or any of the transactions contemplated by this Agreement.

4.11    Client agrees to execute financing statements and any and all other instruments and documents that FOI may request to perfect, protect, establish or enforce the security interests granted hereunder or other provisions hereof. Client hereby authorizes FOI to file such financing statements without Client's signature, signed only by FOI as a secured party or to use a reproduction of this agreement to reflect the security interests granted hereunder.

## SECTION 5.    Disputes, Chargebacks and Reserves

5.1     With respect to any Account, upon the occurrence of a breach of any of the representations or warranties contained in Section 4.1, or upon the assertion by a customer of a Dispute, such Account may, at FOI's option, be charged back to Client.

5.2     Client will notify FOI immediately in the event that a customer alleges any Dispute, or returns or desires to return any goods purchased from Client relating to an Account. FOI may but is not obligated to settle, compromise, adjust or litigate all such Disputes or returns upon such terms as FOI deem advisable. If an unadjusted Dispute delays the payment of any Approved Account when due, FOI will have the right to charge back to Client that Account.

5.3     FOI may, at FOI's option, charge back to Client all amounts owing on Non-Approved Accounts which are 45 or more days past due. FOI has the sole discretion to decide not to purchase such Accounts in the future.

5.4     Client shall purchase promptly all Accounts charged back by FOI, provided, however, that until payment by Client to FOI of all monies due with respect to such charged back account, title shall pass to Client subject, however, to FOI's security interest therein. Client agrees to indemnify and save FOI harmless from and against any and all loss, costs and expenses caused by or arising out of disputed Accounts, including, but not limited to, collection expenses and attorney's fees incurred with respect thereto.

5.5     FOI may maintain such reserves as FOI, in FOI's sole discretion, deems advisable as security for the payment and performance of the Obligations, including, without limitation, (i) reserves for the amount of any Account which is subject to a Dispute, (ii) reserves for the amount of any Approved Account from any single customer that is greater than fifty percent (50%) of all Accounts, (iii) reserves for the amount of any Non-Approved Account that is 45 or more days past due, (iv) reserves for the amount of any Non-Approved Accounts from any single customer that is greater than fifty percent (50%) of all Accounts and (v) reserves for that amount of all Non-Approved Accounts from any single customer if twenty five percent (25%) or more of such customer's outstanding Accounts are 45 or more days past due.

**SECTION 6.    Administration**

6.1    Client will, from time to time, (i) execute and deliver to FOI confirmatory schedules of Accounts assigned to FOI (each an Assignment Schedule), together with one copy of each invoice, acceptable evidence of shipment and such other documentation and proofs of delivery as FOI may require. Each invoice relating to an Account and all copies thereof will bear a notice, in form satisfactory to FOI, that the Account has been sold and assigned to and is payable only to FOI. Client agrees that Client will not change such notice on invoices and will not direct its customers to pay Client or any third party amounts due under invoices. Client agrees to prepare and mail all invoices relating to Accounts, but FOI may do so at FOI's option. Client agrees to execute and deliver to FOI such further instruments of assignment, financing statements and instruments of further assurance as FOI may reasonably require. Client authorizes FOI to execute on Client's behalf and file such UCC financing statements as FOI may deem necessary in order to perfect and maintain the security interests granted by Client in accordance with this Agreement. Client further agrees that FOI may file this Agreement or a copy thereof as such UCC financing statement.

6.2    If any remittances are made directly to Client, Client's employees or agents, Client will act as trustee of an express trust for FOI's benefit, hold the same as FOI's property and deliver the same by the next business day to FOI forthwith in kind. Client agrees to pay five percent (5.00%) of the amount of any payment that has been received and not delivered to FOI on the next business day following the date of receipt by Client.

6.3    As owners and assignees of the Accounts, FOI shall have the right to bring suit, in Client's name or FOI's name, and generally shall have all other rights respecting said Accounts, including without limitation the right to: accelerate or extend the time of payment, settle, compromise, release in whole or in part any amounts owing on any Accounts and issue credits in Client's name or FOI's name. FOI and/or such designee as FOI may from time to time appoint are hereby appointed Client's attorney-in-fact to endorse Client's name on any and all checks or other forms of remittances received by FOI where such endorsement is required to effect collection and to transmit notices to customers, in Client's or FOI's name, that amounts owing by them have been assigned and are payable directly to FOI; this power, being coupled with an interest, is irrevocable.

6.4    Client shall permit FOI and any authorized representatives designated by FOI to visit and inspect any of the properties of Client, including its financial and accounting records, and to make copies and take extracts therefrom, and to discuss its affairs, finances, and business with its officers at such times during normal business hours and as often as FOI requests. FOI may, at any time after the occurrence of an Event of Default, remove from Client's premises all such records, files and books relating to Accounts. Client will pay FOI, upon demand, all costs and expenses, including, without limitation, the fees and disbursements of counsel and the cost of all searches, filings, recordation or registration fees and taxes, periodic field examinations of the FOI's collateral or Client's operations (plus a charge of $750 or prevailing market rate per person per day for FOI's examiners in addition to the reimbursement for their expenses), which FOI may incur at any time in perfecting, protecting, enforcing or administering FOI's rights hereunder or in any collateral in which FOI has a security interest or in the defense or prosecution of any action or proceeding concerning any matter growing out of or in connection with this Agreement and/or any security interest herein granted to FOI.

6.5    If FOI determines that the credit standing of a customer has deteriorated after FOI has assumed the Credit Risk on an Account, Client will, at FOI's request, exercise such rights as Client may have to reclaim or stop the goods in transit, and Client hereby grants to FOI the right to take such steps in Client's or FOI's name. At FOI's request, all, returned, reclaimed or repossessed merchandise, inventory or goods relating to Accounts, shall be set aside by Client, marked with FOI's name and held for FOI's account as owner and assignee. If FOI so elects, Client will deliver such goods to FOI or sell same for FOI's account. FOI shall, however, have the right to sell or otherwise dispose of any such goods on terms

Collection Date Factoring Agreement                6

JJ
Initial

acceptable to FOI without notice to Client, or if notice s required by law, five (5) days notice shall constitute reasonable notification.

6.6    FOI will render a monthly statement of account to Client within twenty (20) days after the end of each month. Such statement of account will constitute an account stated unless Client makes written objection thereto by Written Notice within thirty (30) days from the date such statement is rendered to Client.

6.7    Client will maintain a system of accounting established and administered in accordance with sound business practice to permit preparation of financial statements in conformity with GAAP. Client will promptly furnish FOI with such statements prepared by or for Client showing Client's financial condition and the results of Client's operations, including without limitation for each of Client's fiscal years, as soon as available but not later than sixty (60) days after the end of each fiscal year, Client's balance sheet, income statement and the related statement of cash flows for and as at the end of such fiscal year and a statement of stockholder's equity for such fiscal year, compiled by Client's independent certified public accountants and certified by Client to be prepared in accordance with GAAP and to fairly present Client's financial position and results of operations for such period. Client will also furnish FOI with such financial statements for the fiscal mid-year end as soon as available but not later than sixty (60) days after the end of each fiscal mid-year. In addition, the Client shall furnish additional financial statements and information as FOI may request verbally or by Written Notice from time to time within reasonable time from the date of such requests. Client authorizes FOI to communicate directly with Client's independent certified public accountants and authorizes such accountants to discuss Client's financial condition and statements directly with FOI.

6.8    Client authorizes FOI to disclose such information as FOI deems appropriate to persons making credit inquiries about Client.

## SECTION 7.    Collateral Security

As collateral security for all Obligations, Client hereby assigns and grants to FOI a continuing security interest in all of the following property, whether now owned by Client or hereafter acquired by Client or arising in Client's favor: (i) Accounts; (ii) general intangibles; (iii) monies, securities and other property now or hereafter held or received by, or in transit to FOI from or for Client, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all of Client's deposits and credit balances in FOI's possession; (iv) all inventory, work in process, raw material; (v) all equipment, fixtures, and furniture (vi) books, records and other property at any time evidencing or relating to any of the foregoing property; and; (vii) proceeds of any of the foregoing property including, without limitation, the proceeds of any insurance policies covering any of the foregoing property. Recourse to the collateral security herein provided will not be required, and Client will at all times remain liable for the payment and performance of the Obligations upon demand by FOI.

## SECTION 8.    Events of Default

The occurrence of any of the following acts or events will constitute an Event of Default: (a) if Client fails to make payment of any of the Obligations when due; (b) if Client fails to make any remittance required by this Agreement; (c) if Client commits any breach of any of the terms, representations, warranties, covenants, conditions or provisions of this Agreement, or of any present or future supplement or amendment hereto or of any other agreement between FOI and Client; (d) if Client becomes insolvent or unable to meet Client's debts as they mature; (e) if Client fails to pay when due any material obligations or liabilities owing by Client to any person or entity (including without limitation, any United States and state taxes); (f) if Client delivers to FOI a false financial statement or if any representation, warranty, certification, or other statement made by Client to FOI is false in any material respect when made; (g) if Client calls, or has called by a third party, a meeting of creditors; (h) if any bankruptcy proceeding, insolvency arrangement or similar proceeding is commenced by or against Client; (i) if Client suspends or discontinues doing business for any reason; (j) if a receiver or trustee of any kind is appointed for Client or any of Client's property; (k) if any guarantor of Client's Obligations dies or becomes insolvent or has

Collection Date Factoring Agreement          7

commenced by or against such guarantor any bankruptcy proceeding, insolvency arrangement or similar proceeding; (l) if any guaranty of Client's Obligations is terminated; (m) if any change of ownership occurs with respect to more than forty (40%) percent of Client's capital stock; or (n) if a notice of lien, money judgment, levy, assessment, seizure or writ, or warrant of attachment is entered or filed against Client or with respect to the Accounts or any other collateral in which Client has granted FOI a security interest; or (0) if Client sells, leases, transfers or otherwise disposes of all or substantially all of Client's property or assets, or consolidates with or merges into or with any corporation or entity.

Upon the occurrence and during the continuance of an Event of Default, FOI will have the right to terminate this Agreement and all other arrangements existing between FOI forthwith and without notice, and the Obligations will mature and become immediately due and payable and FOI will have the right to withhold any further payments to Client until all Obligations have been paid in full. In addition FOI will have all of the rights of a secured party under the Uniform Commercial Code, including, without limitation, the right to take possession of any collateral in which FOI has a security interest and to dispose of same at public or private sale and Client will be liable for any deficiency. FOI will not be required to proceed against any collateral but may proceed against Client directly. FOI shall also have the right, as of the effective termination date, or as of any immediate termination as described above, if there has been any breach of this Agreement, to notify the postal authorities to change the address on all mail sent out to Client to a post office box under FOI's control; if notice is required by law, five (5) days notice shall constitute reasonable notification.

If either party to this Agreement shall bring any action for any relief against the other, declaratory or otherwise, arising out of this Agreement, the losing party shall pay to the prevailing party a reasonable sum for attorney fees incurred in bring such suit and/or enforcing any judgment granted therein, all of which shall be deemed to have a accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment. For the purpose of this section, attorney fees shall include, without limitation, fees incurred in the following: (1) postjudgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examination; (4) discovery; and (5) bankruptcy litigation.

### SECTION 9.    Term and Termination

The term of this Agreement shall be one year from the date hereof and shall be automatically renewed for successive like periods of the same duration. Both Client and FOI shall have the right to terminate this Agreement at the end of the first Contract Year or at the end of any successive Contract Year by giving 60 days' prior Written Notice thereof; provided, however, that Client will not terminate this Agreement so long as Client is indebted or obligated to FOI in connection with any other agreements between FOI and Client. Furthermore, if the Client terminates this contract prior to the end of each anniversary date, the client agrees to pay an early termination penalty of $3,000.00.

Notwithstanding any such Written Notice of termination, Client's and FOI's respective rights and obligations arising out of transactions having their inception prior to the date of termination of this Agreement and all terms, provisions and conditions hereof, including but not limited to, the security interests hereinabove granted to FOI (including Accounts arising, acquired or created after the date of termination of this Agreement), will continue in full force and effect until all Obligations have been paid in full. All of the representations, warranties and indemnities and covenants made by Client herein will survive the termination of this Agreement.

### SECTION 10.    Modifications, Waivers and Miscellaneous Provisions

This Agreement may not be changed or terminated orally; it constitutes the entire agreement between Client and FOI and will be binding upon Client's and FOI's respective successors and assigns, but may not be assigned by Client without FOI's prior written consent. No delay or failure on FOI's part in exercising any right, privilege, or option hereunder will operate as a waiver thereof or of any other right, privilege or option. No waiver whatsoever will be valid unless in a Written Notice, signed by FOI, and then

JJ
Initial

only to the extent therein set forth. If any term or provision of this Agreement is held invalid under any statute, rule or regulation of any jurisdiction competent to make such a decision, the remaining terms and provisions will not be affected, but will remain in full force and effect.

Any Written Notice to be given under this Agreement will be in writing addressed to the respective party as set forth in the heading to this Agreement and will be personally served, telecopied or sent by overnight courier service or United States mail and will be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by telecopy, on the date of transmission if transmitted on a Business Day before 4:00 p.m. (Los Angeles time) or, if not, on the next succeeding Business Day; (c) if delivered by overnight courier, two (2) days after delivery to such courier properly addressed; or (d) if by U.S. Mail, four (4) Business Days after depositing in the United States mail, with postage prepaid and properly addressed.

## SECTION 11.  Governing Law, Venue and Waiver of Jury

THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES. CLIENT HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF LOS ANGELES, THE STATE OF CALIFORNIA. IF CLIENT PRESENTLY IS, OR IN THE FUTURE BECOMES, A NON-RESIDENT OF THE STATE OF CALIFORNIA, CLIENT HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO CLIENT, AT CLIENT'S ADDRESS APPEARING IN FOI'S RECORDS AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID.

**WAIVER OF JURY TRIAL. CLIENT AND FOI HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY DEALINGS BETWEEN CLIENT AND FOI RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. CLIENT AND FOI ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF CLIENT HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH OF CLIENT AND FOI WILL CONTINUE TO RELY ON THE WAIVER IN THE RELATED FUTURE DEALINGS BETWEEN CLIENT AND FOI. CLIENT AND FOI FURTHER WARRANT AND REPRESENT THAT THEY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RESPECTIVE JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.**

## SECTION 12.  Definitions

"Accounts" -- All presently existing or outstanding and all hereafter created or acquired accounts (as that term is defined in the UCC), contract rights, documents, notes, drafts and other forms of obligations owed to or owned by Client arising or resulting from the sale of goods or the rendering of services by Client, all general intangible relating thereto, all proceeds thereof, all guaranties and security therefor, and all goods and rights represented thereby or arising therefrom, including, but not limited to, returned, reclaimed and repossessed goods and the rights of stoppage in transit, replevin and reclamation.

"Approved Account" -- An Account with respect to which FOI has issued a credit approval which has not subsequently been withdrawn.

"Base Rate" -- The highest prime rate publicly announced from time to time by Wall Street Journal as its prime or base rate (or equivalent). Notwithstanding the foregoing, the Base Rate shall never be lower than six percent (6.00%) per annum for this Agreement.

Collection Date Factoring Agreement    9

"Business Day"  -- Any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the Federal Laws.

"Collection Amount" -- The amount received by FOI from a customer in payment of an Account up to the Net Amount of such Account.

"Collection Date" -- (a) The date on which FOI receives payment of an Account; or (b) In the event an Approved Account remains unpaid, the date which is the last day of the fourth month following its longest maturity date after the due date of such Account, provided that the customer has not asserted a Dispute.

"Credit Risk" -- The risk that a customer will be financially unable to pay an Account at maturity, provided that the merchandise has been received or services rendered and accepted by the customer without Dispute.  Customer's financial inability to pay does not include non-payment of customer's obligation due to a consequence of enemy attack, civil commotion, strikes, lockouts, the act or restraint of public authorities, acts of God or force majeure.

"Contract Year" -- The twelve month period commencing on the date of this Agreement or on any anniversary thereof.

"Costs" -- All costs, fees and expenses (including attorney's fees and the allocated costs of internal counsel) incurred by FOI in connection with (i) the creation, negotiation or administration of this Agreement, any related instrument, document or agreement, or any waiver, forbearance, amendment or modification thereof (ii) the perfection, protection, preservation or enforcement of FOI's rights in any collateral in which FOI has been granted a security interest and (iii) all filing fees, filing taxes or search reports.

"Daily Balance" -- The outstanding balance of all advances made by FOI to Client or for Client's account in accordance with subsection 2.2 hereof less all amounts credited to Client's account in accordance with subsection 2.1 hereof.

"Delivery" -- The delivery of goods or performance of services in accordance with the terms agreed to in writing between Client and a customer, provided that if no such terms are specified in writing, delivery shall mean delivery of goods or performance of services at the customer's place of business.

"Dispute" -- A dispute or claim, bona fide or otherwise, as to price, terms, quantity, quality, Delivery, or any cause or defense to payment of an Account whatsoever other than financial inability of a customer to pay the Account.

"Effective Date" -- The date set forth below FOI's signature hereto.

"GAAP" -- Generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Boards of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"FOI Clients" -- Any persons, corporations, partnerships, companies, associations or entities (other than Client) which have entered into factoring, inter-credit or financing agreements with any of FOI's offices.

"Ledger Debt" -- Indebtedness owing by Client to FOI as a result of FOI's purchases of invoices evidencing sales to Client by FOI Clients.

"Misdirected Payment" -- A payment that has been received by Client and not delivered in kind to Finance One within two (2) business days following the date of receipt by Client.

Initial

"Net Amount" -- The gross face amount of an Account less the discount offered by Client and taken by FOI at the time FOI purchases such Account.

"Non-Approved Account" -- An Account with respect to which FOI has not issued a credit approval or has subsequently withdrawn a credit approval.

"Obligations" -- All loans, advances, debts, liabilities, obligations, covenants and duties owing by Client to FOI, direct of indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including, without limitations, Ledger Debt and indebtedness arising under any guaranty made by Client for FOI's benefit or issued by FOI on Client's behalf.

"Purchase Price" -- An amount equal to the Net Amount of an Account, less factoring commissions, credits (including, without limitation, merchandise returns and credit memos), charge backs, allowances, and all other charges provided thereunder.

"Takeover Account" -- An Account created or existing prior to the Effective Date.

"UCC" -- The Uniform Commercial Code as in effect on the date hereof in the New York, as amended from time to time, and any successor statute.

"Written Notice" -- Notice given in writing in accordance with Section 10 of Agreement.


Witness the due execution hereof by the respective duly authorized officers of the undersigned as of the Effective Date.


**D.W. AMERICA, INC.**

Jae Hun Jung
President

Effective Date: 4/30/2001

**Finance One, Inc.**

Dong Bae Kim
Vice President

JJ
Initial